## COURT OF APPEALS,

### March 2, 1909.

## THE PEOPLE v. BERNARD CARLIN.

### (194 N. Y. 448.)

(1). MURDER—DEFENSE OF INSANITY—"DEFECT IN REASON."

A person is not excused from criminal liability as an insane person except upon proof that at the time of committing the alleged criminal act he was *laboring under a defect of reason* which, furthermore, must have been such as to render him either ignorant of the nature and quality of the act he was doing, or ignorant that the act was wrong. This is the only test of responsibility known to the law of this State. The phrase "defect of reason" in the statute means disease of the mind, and a person who has committed an act otherwise criminal may not be relieved from the consequences of that act where insanity is relied upon as the sole defense, unless at the time of the commission of the act he was suffering from some disease of the mind.

(2). SAME—EVIDENCE.

Defendant was asked on re-direct examination, "Did you think you were doing wrong when you shot your mother?" He answered, "No." This was followed by a ruling sustaining an objection to the question and this was again followed by a like ruling upon substantially the same question. The answer to the first question was not stricken out nor was the jury directed to disregard it. *Held,* that defendant had the full benefit of the statement that it was desired to elicit on that subject and the defendant was not harmed by the rulings.

APPEAL from a judgment of the Kings County Court, rendered July 6, 1908, at a Trial Term upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

*Thomas J. Surpless,* for appellant. The trial court erred in excluding evidence tending to show that the defendant, at the time of committing the alleged criminal act, did not know that the act was wrong. *People v. Burgess,* 153 N. Y. 561;

*Flanagan v. People,* 52 N. Y. 467; *McNaughton's Case,* 10 Cl. & Fin. 210.

*John F. Clarke, District Attorney (Peter P. Smith* of counsel),for respondent. The trial court did not err in the exclusion of evidence. *McKown v. Hunter,* 30 N. Y. 625; *Kerrains v. People,* 60 N. Y. 221. Mere technical errors not affecting the substantial rights of the defendant are required to be disregarded by section 542 of the Code of Criminal Procedure. *People v. Chacon,* 102 N. Y. 669; *People v. Wayman,* 128 N. Y. 585.

WILLARD BARTLETT, J.:

This is a case of the premeditated and deliberate killing of a mother by her youthful son, apparently inspired by motives of hatred and revenge for real or fancied neglect and ill-treatment on her part. At the time of the homicide, which was committed in the apartments of the victim at No. 587 Quincy street, in the borough of Brooklyn, Kings county, New York, on the 8th day of April, 1908, the defendant was twenty-two years of age and his mother was fifty-one. A large part of the defendant's life had been spent in charitable or reformatory institutions, one of which was a Catholic protectory. After leaving this protectory, he appears to have been convicted of an attempt to commit grand larceny in February, 1906, for having assisted in the theft of a horse and wagon. For this offense he was sentenced to the Elmira Reformatory, where he remained eleven months, when he was transferred to the reformatory at Napanoch. From Napanoch, according to his own testimony, he wrote to his mother asking her assistance to procure his release on parole. She made no response; then, as he testified, "I swore I would kill her if I had to go to hell five minutes afterwards; I took my oath on it; any mother that has any love in her would certainly write a letter to her son

while he is in prison. I am willing to go to the chair for what I did, whether she is my mother or not. I don't want to go to prison; I am willing to go to the chair. I know you are framing it up to send me to prison."

The defendant further stated while testifying in his own behalf that when he was at Napanoch he made up his mind that when he got out he was going to return to New York and kill his mother. This intention he carried out by firing four pistol shots into her body when she met him upon his entry into her apartment in Brooklyn on April 8, 1908. He testified: "I was close to her when I shot the pistol off. I must have hit her four times. I kept plugging away." His married sister was present, and immediately after he had shot his mother the defendant exclaimed to her, "I would kill you, too, if it was not for the kid." Thereafter he was speedily overcome and detained until the arrival of the police by a neighbor named George Tonjes, to whom he admitted that he had done the shooting, and said that if he had a knife and could get away he would kill his sister.

The case which the record thus presents for our consideration upon this appeal is one in which the killing by the defendant is established beyond any possible doubt and wherein the elements of premeditation and deliberation are proved by the sworn statements of the defendant himself. There is no suggestion of any defense except insanity; and although no express plea was interposed based upon that ground, proof that the defendant was insane was receivable under the plea of not guilty, and if such proof sufficed to raise a reasonable doubt as to his guilt in the minds of the jury, it would have justified an acquittal.

The minutes of the trial occupy less than twenty-two printed pages; and there are only five exceptions in the case. I will discuss these exceptions in the order in which they were taken.

I. Upon the cross-examination of Mary Powers, the sister

of the defendant, who was a witness for the People, after she had testified that when her father died the defendant was a baby about eighteen months or two years old, she was asked by the defendant's counsel: "Was he put in an institution shortly after your father's death?" To this question Mr. Martin, the assistant district attorney, who was conducting the case for the prosecution, objected on the ground that it was incompetent, immaterial and irrelevant, saying: "What happened to him when he was three years old has no bearing on this case." The court sustained the objection and defendant's counsel excepted. There was no error in this ruling. The fact which the question sought to prove, that the defendant was placed in an institution in infancy, could hardly tend in any way to establish his insanity, which, as has already been pointed out, was and is the only defense suggested by his counsel.

II. The same witness proceeded to testify on cross-examination that it seemed to her that the defendant was at home two or three years after her father's death, she could not tell just how long, and she was then asked whether he was at any time in an orphan asylum. Mr. Martin interposed an objection on the ground that the question was incompetent, immaterial and irrelevant; that the fact sought to be proved would be no excuse or justification for the crime, adding: "If counsel would state his reasons for asking these questions I might consent to some of them, but they are incompetent." In response to this suggestion counsel for the defendant submitted "that the defense has a right to show lack of motherly care, the lack of opportunities for the man to differentiate between right and wrong; we will show that for sixteen years out of his twenty-two years of life he has been in institutions, and we believe this perfectly legal and material." The assistant district attorney replied: "If he seeks to prove that this man is insane that is not the proper way to prove it; the mere fact

that a man has been in a State institution has no bearing whatever on this case; lack of motherly care has nothing to do with this case; the question is, when he went there to do that, was he sane or insane?" The objection was then sustained by the court and an exception was taken. The court might well have permitted the question to be answered. The whole previous career of a man, in its general aspects at least, may throw some light on his mental condition at the time when he is alleged to have committed a criminal offense, and when insanity is relied upon as a defense in his behalf. No harm could have come to the defendant, however, from this ruling; for when he took the witness stand himself he was allowed to narrate as fully as he desired his various experiences in the institutions of which he had been an inmate, after he was old enough to have any recollection on the subject.

III. It is true that the defendant's testimony to the effect that when he was eighteen months old he was put in a nursery was stricken out on the motion of the assistant district attorney, and this ruling is the subject of the third exception in the case. It is a little difficult to perceive why the motion was made; such extreme technicality as was invoked by a number of the objections on the part of the prosecutor in this case does not conduce to the security of judgments of conviction; but the ruling may be sustained on the ground that the witness could not have remembered what happened to him when he was only eighteen months old.

IV. On the direct examination of the defendant he testified that he did not hear a word from his mother at any time while he was at Napanoch. This statement was stricken out upon the motion of the assistant district attorney and the defendant's counsel excepted. No harm was done by this action of the court. Of course, the fact that the defendant had not heard from his mother while he was the inmate of a reformatory institution could not be considered for a moment as an

excuse for his crime. There was no suggestion that he had in fact heard from her and that he was acting under an insane delusion to the contrary. Furthermore, the defendant was permitted to state most fully the different grievances he had against his mother, as, for example, "I asked her to take me home; she treated me as if I was a dog and pushed me out of the house. * * * She gave me no chance at all. * * * She put me in the Catholic Protectory; she went to court against me and said I would not go to school. I never got three kind words from her in my life."

V. The fifth and last exception is to the ruling of the trial judge in sustaining an objection to the following question to the defendant: "Is it not a fact that your mother did not treat you the same as the other children?" The fact which the question called for was not relevant to any issue and the objection was properly sustained.

By far the most serious assignments of error presented for our consideration by this appeal are two rulings to which no exception was taken. Almost at the close of the examination of the defendant, on the re-direct, the following proceedings took place:

"Q. Did you think you were doing wrong when you shot your mother?

"A. No.

"Mr. Martin: I object as incompetent, immaterial and irrelevant. If insanity is the defense, this is not the way to prove it.

"The Court: Objection sustained.

"(The Witness) I am as sane as anybody in this court.

"Q. Did you realize that you were doing wrong at the time you shot your mother?

"Mr. Martin: I object as incompetent, immaterial and irrelevant.

"The Court: Objection sustained."

It is contended that these rulings were erroneous because

the mental condition of the defendant was material on the question of his alleged insanity and because it was particularly important to show what were his notions of right and wrong, in view of the statutory definition of the insanity which constitutes a defense under our criminal law; and we are asked to exercise the power which this court possesses on appeals of this character and reverse the judgment notwithstanding the absence of any exception. Code Crim. Proc. sec. 528. But assuming that the defense was entitled to show the mental attitude of the defendant with respect to the character of this act, in support of the defense of insanity, I am of the opinion that as his testimony was left he had the full benefit of the statement that it was desired to elicit on that subject, although it would have been wiser to interpose no objection and to allow both questions to be answered. The declaration of the defendant that he did not think he was doing wrong when he shot his mother was not stricken out nor were the jury directed to disregard it. It remained in the case as a part of the defendant's evidence. The declaration of the court that the objection was sustained (neither the objection nor ruling having been made until after the question was answered) had no effect except perhaps as a warning that other questions in the same line would not be allowed; and the subsequent ruling related to a question so nearly like that which had already thus been answered that it cannot fairly be considered to have harmed the defendant.

In the brief of counsel for the appellant it is asserted that the trial court permitted a recital of the "awful" facts of the defendant's life and then upon the objection of the prosecuting attorney refused to allow the accused to testify that he did not know he was doing wrong in "removing" the one who, as he believed, was most responsible for his terrible existence. I have shown that the defendant's testimony to the effect that he did not think he was doing wrong when he shot his mother

was allowed to remain upon the record. The brief proceeds: "The defendant's testimony throughout showed that there was an utter failure of maternal affection and solicitude for his welfare, physical and moral, on the part of his mother, and the appellant contends that the exclusion by the trial court of the testimony sought to be introduced by the defendant at the close of its case constitutes such error as to warrant this court in granting a new trial to the defendant."

Maternal neglect has never yet been recognized as an excuse for matricide, although this argument apparently implies that it may be so considered. Evidence of such neglect had no relevancy in behalf of the defendant except as tending to show that it might have influenced a diseased mind in creating therein false notions of right and wrong in respect to the killing. No matter how firmly the defendant may have been convinced that it was not wrong for him to kill his mother, his convictions to that effect could avail nothing as a defense unless they were the outcome of mental derangement. Under our statute which embodies the English rule laid down in the celebrated McNaghten case (1 C. & K. 134) a person is not excused from criminal liability as an insane person except upon proof that at the time of committing the alleged criminal act he was *laboring under a defect of reason* which, furthermore, must have been such as to render him either (1) ignorant of the nature and quality of the act he was doing, or (2) ignorant that the act was wrong. Penal Code, sec. 21. This is the only test of responsibility known to the law of the State of New York. *People v. Silverman,* 181 N. Y. 235, 19 N. Y. Crim. 360. The phrase "defect of reason" in the statute means disease of the mind, and a person who has committed an act otherwise unquestionably criminal may not be relieved from the consequences of that act where insanity is relied upon as the sole defense, unless at the time of the commission of the act he was suffering from some disease of the mind.

There was a complete failure to prove that the defendant was suffering from any such disease when he shot his mother, unless the shooting, alone and of itself, from admitted motives of hatred and revenge, is to be deemed evidence of that fact, and this can hardly be contended in view of the numerous instances on record in which sane persons have slain others to avenge wrongs which they believed themselves to have sustained. That proof would have been adduced in support of the defense of insanity if there had been any real basis for that defense can hardly be doubted, as we assume that counsel assigned to defend the accused did their full duty, and they would have had no difficulty in procuring expert opinion evidence in behalf of their client if there had been any facts on which to predicate an opinion that he was insane. If he had manifested any symptoms of mental derangement during the period which elapsed between his arrest and his trial, proof of such symptoms could undoubtedly have been furnished by the jail physician or the prison keepers, but nothing of the sort was offered. That the defendant was a man of low and brutal instincts is apparent from his own testimony; but he was not unintelligent; he could read and write; and a perusal of that testimony does not indicate that he was suffering from any mental disorder whatever.

It seems to me impossible to escape the conclusion that the verdict of the jury was amply warranted by the proof, and as the record discloses no error of law which can have been detrimental to the defendant's rights, it is our duty to affirm the judgment.

CULLEN, Ch. J., EDWARD T. BARTLETT, HAIGHT, VANN, WERNER and HISCOCK, JJ., concur.

Judgment of conviction affirmed.