Jasen, J.
(dissenting). I would affirm the order of the Appellate Division. In my opinion, the rule adopted by the majority today unfairly restricts the People’s use of evidence of prior crimes and antisocial conduct offered solely for the purpose of proving defendant’s mental condition. The majority, in adopting a new restrictive rule, overemphasizes the possibility of prejudice to the defendant and, in so doing, has withheld from the jury logically probative and clearly relevant proof of defendant’s sanity which the trial court, in its discretion, may accept into evidence.
As noted by the majority, once the defense of insanity is interposed by the defendant, it is incumbent upon the People to prove defendant’s sanity beyond a reasonable doubt. (See, e.g., People v Silver, 33 NY2d 475.) In attempting to meet this evidentiary burden, the prosecution should be permitted to introduce evidence of the whole previous career of the accused in order to assist the jury in evaluating the insanity defense interposed. This is so because a defendant’s reliance upon the insanity defense places his mental condition in issue and the question to be determined by the jury is not whether the defendant committed the acts complained of, but, rather, whether the defendant is criminally responsible for his actions.
In the case before us, defendant admitted killing his brother-in-law. His plea of not guilty by reason of insanity made the issue of defendant’s sanity the sole question to be decided by the jury. Thus, the traditional concern as to whether evidence of prior crimes and antisocial conduct will lead the jury to improperly infer criminal predisposition, if *255 not altogether absent from the case, is at least greatly attenuated. As a result, the rule articulated in People v Molineux (168 NY 264) and its progeny — where the issue was whether the defendant actually committed the acts complained of — has little application to the instant case, except insofar as it reaffirms the general proposition that evidence bearing upon the character and prior history of the defendant may be excluded when its probative force is outweighed by its potential for prejudice.
The general rule that evidence which is highly prejudicial and only marginally probative and relevant must be excluded is grounded upon the notion that a defendant in fairness must be convicted upon proof of his guilt of the crime charged and not upon an inference of guilt flowing from proof that he has been a lifelong criminal, no matter how antisocial his prior behavior may have been. The wisdom and continued vitality of this rule is, of course, beyond dispute. However, in a case where a criminal defendant admits committing an illegal act and relies exclusively upon the defense of insanity to gain an acquittal, there is no danger that he will be convicted on the basis of an inference of criminal predisposition flowing from proof of prior crimes and antisocial conduct because the question of whether he committed the crime is simply not in issue.
The sole question for the jury to determine in such a case is whether the defendant was sane at the time he committed an act which has been proscribed by the Legislature. Since the risk that the defendant will be prejudiced is absent in a case where the defendant relies exclusively on the insanity defense, the only remaining factor to be considered in determining whether evidence of prior crimes and antisocial conduct is admissible is whether such evidence has any legal or medical probative value, or, quite simply, whether such evidence is material and relevant to the issue of defendant’s sanity at the time of the offense and whether it would be helpful to the jury in evaluating the defense of insanity.
The majority suggests that in order to be relevant, evidence of prior crimes and antisocial conduct must be consonant with the prosecutor’s theory of sanity — in this case, a "personality disorder”, also termed an "explosive personality”. However, the majority cites no authority for this proposition other than the general rule that the probative value of such evidence must outweigh its potential for prejudicing the defendant. In *256 fact, where the defendant’s sanity is in issue, the weight of authority is to the contrary.
It has long been recognized that the scope of evidence which is admissible on the issue of insanity is very broad indeed. In People v Carlin (194 NY 448, 452), for example, this court noted "[t]he whole previous career of a man, in its general aspects at least, may throw some light on his mental condition at the time when he is alleged to have committed a criminal offense, and when insanity is relied upon as a defense in his behalf.” A similar view has also been articulated by Professor Wigmore in his treatise on evidence. He states: "The first and fundamental rule, then, will be that any and all conduct of the person is admissible in evidence. There is no restriction as to the kind of conduct. There can be none; for if a specific act does not indicate insanity it may indicate sanity. It will certainly throw light one way or the other upon the issue.” (2 Wigmore, Evidence [3d ed], § 228, p 9; emphasis in original.) Other leading treatises are in agreement. (See Fisch, New York Evidence [2d ed], § 243, p 150; 1 Wharton, Criminal Evidence [13th ed], § 258, pp 619-620; Weihofen, Mental Disorder as a Criminal Defense, pp 312-317; McCormick, Evidence, § 249, pp 592-593.) Likewise, a number of our sister States are substantially in accord. (See, e.g., People v David, 12 Cal 2d 639; State v Huson, 73 Wn 2d 660; Whitten v State, 263 Ind 407; Mears v State, 83 Nev 3; McLeod v State, 317 So 2d 389 [Miss]; see, also, 29 Am Jur 2d, Evidence, § 353, pp 402-403, and the cases cited therein.)
The majority asserts that this concept of admissibility was not intended to apply to proof of sanity offered by the People, but only to proof of insanity offered by the defense. However, the majority fails to explain why the same proof offered on the same issue is relevant when offered by the defendant and irrelevant when offered by the People. It would seem that if a criminal defendant may offer any proof of his previous career to the jury in support of his claimed infirmity, the People should be equally free to do so with respect to their claim that the defendant is sane. This is especially true in view of the People’s burden of establishing defendant’s sanity beyond a reasonable doubt.
Although the majority suggests that it has not done so, it has effectively restricted the People to only one theory of sanity. In my opinion, such a restriction is inappropriate. The *257 defendant in this case has grounded his defense on a type of insanity in the nature of a "paranoid delusion”, and contends that he was only temporarily incapacitated at the time he killed his brother-in-law. In order to rebut the defense of temporary insanity, the People attempted to show that the defendant suffered from a "personality disorder” and that, although quite sane, he tended to react violently at the slightest provocation. The majority has chosen to exclude from evidence the testimony of several witnesses which indicated antisocial and violent behavior in the defendant’s past and evidence of prior criminal activity. The proffered reason for this exclusion is that the evidence was either unclear as to the amount of provocation involved or concerned intentional unprovoked violence. This analysis, however, defies reason.
Although the prosecutor relied to a great extent upon the theory that defendant suffered from a "personality disorder”, in so doing he did not bind himself to do so to the exclusion of every other possible theory of sanity. It must be remembered that the prosecutor’s burden in this case was to prove defendant’s sanity beyond a reasonable doubt, not to set forth a single unitary theory of sanity. He was free to offer a number of theories of sanity so long as each was material and relevant to a reasonable alternative explanation which could rebut defendant’s claim of temporary insanity. In my opinion, the excluded evidence was relevant on this issue. The sheer number of violent acts committed by the defendant, both premeditated and as a reaction to whatever amount of provocation and his prior criminal possession of a weapon might well lead the jury to infer that the defendant’s claim of temporary insanity was not worthy of belief in light of his past history of sane but antisocial behavior. This evidence does not become irrelevant merely because the prosecutor failed to label his theory properly.
I would also point out that this inference of "predisposition toward violence” is altogether different from the inference of "criminal predisposition” which the authorities cited by the majority seek to prevent. In fact, a sane yet antisocial predisposition toward violence is an entirely acceptable and relevant theory with which a prosecutor may rebut a claim of temporary insanity. This is equally true whether such predisposition toward antisocial conduct arises from a "personality disorder” or from any other sort of sane yet antisocial behavior. In short, it seems quite clear that most, if not all, of the prosecu *258 tor’s proof was material and relevant on the issue of sanity and was, therefore, admissible.
One other point deserves mention. The rule which prohibits the introduction of evidence of prior crimes and immoral or vicious acts when its probative value is outweighed by its potential for prejudice has been applied both in cases where the People have attempted to introduce such evidence on their direct case (see, e.g., People v Molineux, 168 NY 264, supra) and for impeachment purposes (see, e.g., People v Sandoval, 34 NY2d 371). However, in cases involving the use of prior crimes and immoral and vicious acts for impeachment purposes, the determination of whether the probative force of a given piece of evidence outweighs its potential for prejudice has been left to the sound discretion of the trial court. (People v Shields, 46 NY2d 764, 765; People v Duffy, 36 NY2d 258, 262-263; People v Sandoval, 34 NY2d 371, 374, supra.) Only in cases where a clear abuse of discretion can be shown should the Trial Judge’s ruling be overturned on appeal. This rule springs from the notion that the trial court has inherent power to control the scope of cross-examination and from a recognition of the distinction between the use of evidence of prior crimes and immoral acts as proof of guilt as opposed to proof of credibility. In those situations where such evidence is not used to prove guilt directly, the trial court has been allowed considerable latitude. (See, e.g., People v Shields, 46 NY2d 764, 765, supra; People v Duffy, 36 NY2d 258, 262-263, supra.)
In the instant case, proof of prior crimes and antisocial conduct was offered by the People not to prove that the defendant killed his brother-in-law, for the homicide had been admitted. Rather, such proof was offered only for the limited purpose of establishing defendant’s mental condition, an issue which, like credibility, leads to a separate inquiry requiring proof which is distinct from proof that a criminal act has been committed. Therefore, in my view, the responsibility for determining relevance and weighing the probative force and prejudicial effect of such evidence should be placed primarily upon the trial court.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Jones, Wachtler, Fuchs- *259 berg and Meyer concur with Judge Gabrielli; Judge Jasen dissents and votes to affirm in a separate opinion.
Order reversed, etc.