# HINZEMAN v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

## Division One, June 20, 1904.

1. **NEW TRIAL: Appeal.** Where there was direct and positive evidence to sustain plaintiff's cause of action and equally positive and substantial evidence to sustain the defense, the court does not commit error in granting plaintiff one new trial after verdict for defendant.

2. ———: ———: **Negligence.** Plaintiff's husband was a section foreman on defendant's railroad and was struck by a train running on schedule time. According to plaintiff's evidence her husband had placed himself in a perilous position on the track and that position could have been seen by the engineer and fireman for a distance of 400 or 500 feet, in ample time to have avoided the accident had they used ordinary care to stop the train or sound the whistle. The engineer and foreman admit that they saw him that distance away, and that the whistle was not blown, but they say he was walking between the track on which was their train, and another, and that he did not step upon the track the train was on until it was at most 20 feet from him, and then he did so very suddenly and obliviously, and then it was impossible to stop the train before striking him. The plaintiff's witnesses are corroborated by the fact that the foreman had been testing ties with his pick, by striking them, and one was struck by the pick just where the train struck him, another a half-rail distance further back and others all along back for several rails. *Held,* that, under this evidence, the court would have been justified, after a verdict for defendant, in granting plaintiff a new trial, and although it did not do so on that ground, but on the ground of error in an instruction, its action will be upheld, for the court would not have been justified in sustaining a demurrer to the evidence.

3. **CONTRIBUTORY NEGLIGENCE: Instruction: Wantonness.** Where the injured party was guilty of negligence in being on defendant's railroad track, it is improper to instruct the jury that unless the injury was wantonly or willfully done, plaintiff can not recover. The law imposes on the defendant, after the discovery of the peril in which the injured party was, to use ordinary care to avoid injuring him, although he was guilty of negligence in being there, and a failure to exercise that care makes the defendant liable.

4. **NEGLIGENCE: Definition.** The instructions should define the word "negligence" and then tell the jury that if they find that defendant has done certain acts in the manner covered by that definition, then he has been guilty of negligence and they should find for plaintiff.

5. ———: **Defense: Stopping Train.** Where plaintiff charges the death of her husband to the failure of defendant's servants in charge of the train which struck him, to stop the train or sound the whistle after they had discovered his perilous position on the track and could by the use of ordinary care have stopped it, an instruction that tells the jury that defendant is not liable if it could not by the use of ordinary care have stopped the train in time to have avoided the accident, leaving out any reference to its failure to sound the whistle, is error.

Appeal from Johnson Circuit Court.—*Hon. W. L. Jarrott,* Judge.

AFFIRMED.

*R. T. Railey* for appellant.

(1)   The court should have directed a verdict in favor of defendant upon the admitted facts in regard to deceased's contributory negligence.   Evans v. Railroad, 178 Mo. 508; Moore v. Railroad, 176 Mo. 528; Carrier v. Railroad, 74 S. W. 1002; Guyer v. Railroad, 73 S. W. 584; Van Bach v. Railroad, 171 Mo. 338; Hook v. Railroad, 162 Mo. 569; Sharp v. Railroad, 161 Mo. 214; Tanner v. Railroad, 161 Mo. 497; Davies v. Railroad, 159 Mo. 9; Holwerson v. Railroad, 157 Mo. 223; Coatney v. Railroad, 151 Mo. 48; Peterson v. Railroad, 156 Mo. 555; Kreis v. Railroad, 148 Mo. 321; Culbertson v. Railroad, 140 Mo. 64; Vogg v. Railroad, 138 Mo. 180; Sinclair v. Railroad, 133 Mo. 245; Watson v. Railroad, 133 Mo. 246; Maxey v. Railroad, 132 Mo. 1; Loring v. Railroad, 128 Mo. 360; Boyd v. Railroad, 105 Mo. 371; Barker v. Railroad, 98 Mo. 53; Powell v. Railroad, 76 Mo. 80; Purl v. Railroad, 72 Mo. 168.   (2)   The verdict was for the right party, and should have been permitted to stand.

Moore v. Railroad, 176 Mo. 528. (3) The engineer and fireman were not guilty of wanton, willful or reckless conduct. It was not only necessary that plaintiff should allege that the engineer was guilty of wanton, willful or reckless conduct, but it was likewise important that proof should have been introduced sustaining such charge. Evans v. Railroad, 178 Mo. 508; Moore v. Railroad, 176 Mo. 528; Carrier v. Railroad, 74 S. W. 1002; Guyer v. Railroad, 73 S. W. 584; Van Bach v. Railroad, 171 Mo. 338; Tanner v. Railroad, 161 Mo. 497; Sharp v. Railroad, 161 Mo. 214; Davies v. Railroad, 159 Mo. 9; Holwerson v. Railroad, 157 Mo. 223; Coatney v. Railroad, 151 Mo. 48. (4) Defendant's instruction 4 was not erroneous. Under the authorities contributory negligence is a complete defense, except in those cases where the engineer has been guilty of wanton, willful or reckless conduct, and deceased has been guilty of no such conduct. As deceased was guilty of contributory negligence without question, it devolved upon plaintiff, in order to avoid said contributory negligence, to allege and prove that said engineer at time of accident was guilty of wanton, willful or reckless conduct in respect to deceased. The court therefore properly gave defendant's instruction 4, and committed error in granting a new trial on account of having given the same.

*C. E. Morrow* and *O. L. Houts* for respondent.

(1) If, for any of the reasons assigned in the motion, the verdict should have been set aside, this court will affirm the ruling of the trial court. Ittner v. Hughes, 133 Mo. 679; Hewitt v. Steele, 118 Mo. 463; Bank v. Armstrong, 92 Mo. 265; State ex rel. v. Adams, 84 Mo. 310. (2) The court erred in giving instruction 4 upon the part of defendant and properly granted a new trial for that reason. Under that instruction, before the jury could return a verdict for plaintiff, they were required to find "that defendant's engineer in

charge of the locomotive which struck deceased, willfully, wantonly or recklessly ran deceased down and killed him.'' That instruction is not the law. The failure of defendant's servants in charge of the train to exercise ordinary care to prevent injury to the deceased after his peril was discovered, or by the exercise of ordinary care might have been discovered, was actionable negligence. Kelley v. Railroad, 95 Mo. 279; Morgan v. Railroad, 159 Mo. 262; Riska v. Railroad, 180 Mo. 168; Klockenbrink v. Railroad, 172 Mo. 678; Chamberlain v. Railroad, 133 Mo. 587; Meeker v. Railroad, 77 S. W. 58; Sinclair v. Railroad, 133 Mo. 233; Sullivan v. Railroad, 97 Mo. 113; Schlereth v. Railroad, 115 Mo. 87; Swadley v. Railroad, 118 Mo. 268; LeMay v. Railroad, 105 Mo. 361; Kellny v. Railroad, 101 Mo. 67; Guenther v. Railroad, 95 Mo. 286, 108 Mo. 18; Lynch v. Railroad, 112 Mo. 420; Feidler v. Railroad, 107 Mo. 645; Bunyan v. Railroad, 127 Mo. 112; Williams v. Railroad, 96 Mo. 275; Eswin v. Railroad, 96 Mo. 290; Kelly v. Railroad, 75 Mo. 138; Harlan v. Railroad, 65 Mo. 223; Hanlon v. Railroad, 104 Mo. 381. The doctrine of the Supreme Court of the United States is to the same effect. Ives v. Railroad, 144 U. S. 408; Inland, etc., Co. v. Tucson, 139 U. S. 551. (3) Defendant's sixth instruction is clearly wrong, and a new trial was properly granted for that reason. Under that instruction the jury were told that if deceased's peril was discovered, but too late to avoid the injury to him by stopping the train, ''then the plaintiff is not entitled to recover, regardless of all other facts in the case.'' This, of course, can not be the law. It was the duty of the servants of defendant, after they discovered the peril of deceased, to use all means in their power, consistent with their own safety and those on board the train, to avoid injuring him. They should have sounded the whistle, which they could have done quickly and before they could have stopped the train, and in ample time to have saved his life, after they dis-

covered his peril. Reardon v. Railroad, 114 Mo. 384; Guenther v. Railroad, 95 Mo. 299.

VALLIANT, J.—The plaintiff's husband was struck and killed by a locomotive running on defendant's road, through, as plaintiff charges, the negligence of defendant's servants.

The petition states that plaintiff's husband was in the employ of defendant as a section hand, and that on October 2, 1900, while he was engaged in the line of his duty near and upon the track, a locomotive and train of cars approached him from the rear, and he became and was in great and imminent peril of being run over and killed; that the defendant's servants in charge of the locomotive saw (or by the exercise of ordinary care could have seen) him and became aware of his peril in time to have averted the injury by the exercise of ordinary care by stopping or placing the locomotive under control or sounding the usual danger signals, but negligently failed to use the appliances at hand to stop or place the engine under control or to sound a danger signal and ran the locomotive against the man and killed him.

The answer was a general denial and a plea of contributory negligence.

The facts stated as constituting contributory negligence are that Hinzeman was a section foreman on that part of the road which was the place of the accident; that he had "actual and constructive notice" of the approach of the train; that "after having learned of the approach of said train and with full knowledge of the danger to which he was then subjecting himself, he negligently, carelessly, recklessly, unnecessarily and suddenly stepped near the track upon which defendant's train was then running within a few feet of said train, well knowing at the time that it was travelling at the rate of 25 or 30 miles an hour. Then followed a paragraph in the answer containing statements showing that

it was in the line of his duty to know that the train was coming and then due and by that knowledge he had ample opportunity to avoid the danger, but negligently and suddenly stepped so near the track that he was struck; and that under those circumstances he assumed the risk. There was also in the answer a paragraph stating the duties respectively of the section foreman and the engineer, and drawing therefrom the conclusion that, whilst Hinzeman and the engineer were not fellow-servants within the meaning of the statute, yet they were fellow-servants under the common law, and, therefore, the defendant is not liable.

The reply was a general denial.

The evidence on the part of plaintiff tended to prove as follows:

Hinzeman was the foreman of the section hands in charge of a section just outside the limits of Kansas City. The defendant's railroad at that place consisted of four tracks, lying east and west. The track farthest south was a switch track, the next was the main track for east-bound trains, the next the main track for west-bound trains, and the one farthest north was 'a switch track. Between the two main tracks is a space nine feet wide. The Chicago, Milwaukee & St. Paul railroad crosses defendant's track at a point between a quarter and a half mile west of the point of the accident; about a hundred and fifty feet west of that crossing was a semaphore, designed to signal the engineer on a train approaching the crossing to stop or come on as the condition might warrant. The defendant's tracks looking east from the crossing beyond the point of the accident were straight and level, with nothing intervening to obstruct the view.

On the morning of the accident Hinzeman had started out with his men examining the cross-ties, with a view to removing the rotten ones and replacing them with sound ties. Hinzeman went ahead of his men examining the ties, testing their condition with his pick, marking with

his pick those he judged to be unsound, and the men
followed taking out those marked for removal and put-
ting sound ties in their places. He inspected every tie
and marked as unsound from two to five ties to the rail
as he went along the route that morning. He did not ap-
ply the test of his pick to every tie, but examined them
by sight and tested those whose appearance gave sign of
decay. He walked on the north side of the south main
track in the nine-foot space between the two tracks;
when testing a tie he would turn his face to the south
and, bending over the rail, would strike the tie with his
pick. In going along the track in this way he had ad-
vanced more rapidly than his men who were removing
the ties he had marked, and was a considerable distance
ahead of them. While he was in the act of testing a tie
or marking it with his pick for removal, bending over
the north rail and applying his pick, apparently noticing
nothing else, he was struck by a locomotive drawing a
passenger train and received such injuries that he died
in a short while. It was the regular east-bound passen-
ger train which left Kansas City at 8:10 that morning,
and was on time at the place of the accident.

On approaching the semaphore west of the Mil-
waukee crossing it was necessary for the engineer to
sound the whistle to notify the man at the semaphore
that the train was approaching and to do this in time to
receive the signal from the semaphore which was to in-
form the engineer whether to come on or to stop. The
engineer sounded the whistle and received the signal
to come on. There was no other sound of the whistle
after that until the plaintiff's husband was struck by
the locomotive. One of the plaintiff's witnesses testi-
fied that the train made a loud noise as it passed over
the Milwaukee crossing. The plaintiff's husband was
in plain view of the engineer and fireman and they saw
him from the time they were five hundred feet away
until he was struck. When the engine struck him he was
thrown up as high as the head light of the locomotive,

and fell diagonally across the space between the main tracks, his feet near to the north rail of the south main track.    Just at the point where he was struck there were marks of the pick on two ties, and also on another tie the distance of a half rail to the west, thence all along back to where the men were at work there were at intervals marks of the pick on ties which Hinzeman had condemned to be removed, but east of where he was struck there was no such mark.    As soon as the man was struck sharp blasts of the whistle were sounded and the train was stopped in about two trains length and backed to the place of the accident.    The man was found unconscious, but by the time one of the section men reached him and was bending over him he became temporarily conscious, and asked "What hit me?"    He was placed in a baggage car and carried to the defendant's hospital, where he died about eleven o'clock that morning.

At the close of the plaintiff's evidence the defendant asked an instruction in the nature of a demurrer to the evidence which the court refused.

On the part of the defendant the testimony tended to prove as follows:

The plaintiff's husband, Hinzeman, had worked in the capacity of section hand several years; before the present employment, he had served as foreman of a section gang on another part of the road; on this occasion he had served as a foreman on this section about three weeks; his services as foreman altogether had been about three months.    He was required to have, and did have, a time table and a watch.    He was instructed to study the time table and to consult his watch and from time to time compare his watch with watches of the conductors.    He was also instructed to so regulate his work as to not unnecessarily obstruct the running of trains. The train in question was a regular passenger train which left the Kansas City Union Depot at 8:10 that morning and was due at the Southwest Junction at 8:25;

it was on time. The Southwest Junction is about three-quarters of a mile east of the Milwaukee crossing.

The engineer and fireman testified that as they approached the semaphore the whistle was sounded, whereupon receiving the signal to come on they proceeded on their course, running at the speed of about twenty-five miles an hour.

After they passed over the Milwaukee crossing they saw Hinzeman; he was walking in the nine-foot space between the two main tracks carrying his pick on his shoulder. The language of the engineer was: "Well, we left the union depot at 8:10 and stopped at the Grand avenue depot. Between the Milwaukee crossing and the Southwest Junction, this man, Mr. Hinzeman, was walking between the east-bound track and the west-bound track, with a pick on his shoulder, going the same direction we were going with No. 921. And just as we got within ten or fifteen or twenty feet of him, he came right up on the track, I think about fifteen feet, right up on the track and stooped down to strike a tie." The engineer then said that immediately he threw on the air with his left hand and sounded the whistle with his right, and the train stopped in five car-lengths of where they struck the man. He said he saw Hinzeman four or five hundred feet away before he was struck. He sounded the whistle on approaching the semaphore, but did not sound it again until the man stepped on the track within ten or fifteen feet of the engine, but that the bell was kept ringing all the while. The fireman's testimony was substantially the same as the engineer's.

The cause was submitted to the jury on instructions, some of which were criticised and those will be hereinafter considered. The verdict was for the defendant, but the court sustained the plaintiff's motion for a new trial on the ground that it had erred in giving defendant's instruction numbered 4; from that ruling the defendant has appealed.

1. Appellant's first proposition is that regardless

of the instructions the verdict was for the right party and should be sustained because there was no evidence to sustain the plaintiff's cause of action, and, therefore, the court ought to have given the instruction asked by the defendant at the close of the plaintiff's case in the nature of a demurrer to the evidence.

Both in the pleadings and the evidence the conditions stated and attempted to be proven by the plaintiff are in direct conflict with those stated and attempted to be proven by the defendant. According to the plaintiff's theory the deceased had placed himself in a position of peril but that that position was seen by the engineer and the fireman for a distance of four or five hundred feet in ample time for them, with the means at hand, to have averted the accident if they had exercised ordinary care. According to the defendant's theory the deceased was in a place of safety and continued there until the locomotive was within ten, fifteen, or, at the most, twenty feet of him, when he suddenly turned to the track and bent over the rail to strike a tie with his pick. There was direct and substantial evidence on each side to sustain its theory. There was evidence on each side also tending to show that the evidence on the other side was not trustworthy. Under that state of the evidence the court was in duty bound to submit the case to the jury. If after the verdict had been rendered the trial judge had been of the opinion that it was against the weight of the evidence he would for that reason, if there had been no other, have set it aside and granted a new trial. The law gives him that authority and imposes on him that duty. In that respect the trial court is more powerful than the appellate court. The circuit judge is close to the trial, is in fact a participant in it, he sees the other participants, parties, counsel, witnesses and jurors, and from his position and judicial knowledge is better able than any one else to know if the verdict fairly responds to the claim of justice.

The evidence for the plaintiff shows that the de-

ceased was guilty of negligence that contributed to the accident. Bending over the rail in a position to mark a cross-tie with his pick, thus placing his body in a position to be struck by a train that was liable to pass, was negligence, and but for that negligence he would not have been struck by this locomotive. That he was in that position, and in it for a longer period than the engineer and the fireman stated, is shown not only by the plaintiff's witness who observed him from the elevator window, but the testimony of other witnesses to the fact that just at the place where he was struck there were two ties marked with the pick, and at the distance of a half rail to the west was another tie and also so marked, and still farther to the west along the route were other ties which he had marked. If that testimony is true, then it is not true that the man was walking the distance of four or five hundred feet in the nine-foot space between the tracks, with his pick on his shoulder and suddenly turned when the locomotive was within ten, fifteen or at the most twenty feet of him and bent over the rail to mark a tie. If the defendant's testimony is true then the defendant is not liable, because it would have been impossible for the engineer with the means at hand to have averted the injury. But if the plaintiff's testimony is true the engineer by giving in due time the danger signals with his whistle, could have aroused the deceased from his apparent inattention and have avoided the accident. The testimony of the section hand was that when he reached the place where the wounded man was lying and bent over him on his first returning consciousness he asked, ''What hit me?'' That was evidence tending to show that he had not seen the train before it struck him. He was, according to the plaintiff's evidence, bending over the rail, his face toward the track, apparently attentive only to his work, the engineer and fireman both saw him, according to the plaintiff's testimony at least three hundred feet, according to their own testimony four or five hundred feet.

We are referred to several cases which learned counsel think are analogous to this in which this court has held that an instruction for a nonsuit should have been given, but each of those cases stands on its own facts. As was said by the court, per BRACE J., in Sharp v. Railroad, 161 Mo. 236, "The facts and circumstances which bring a cause within this exception to the general rule that contributory negligence of the plaintiff or deceased precludes a recovery, are as variant as the cases in which it has been invoked and but little assistance can be derived from adjudicated cases, in which the facts are seldom analogous to the one in hand." In that case this court held that the trial court erred in overruling a demurrer to the evidence. There, as here, the man who was killed was a section hand and struck by a train which he ought to have known was coming. But in that case when the engineer approached the man near enough to see his danger "he gave the usual danger signals, at a distance sufficient to have enabled the deceased easily to have withdrawn himself from his exposed position before the train reached him, as the engineer supposed he had done until he was afterwards informed that the deceased had been struck."

In Evans v. Railroad, 178 Mo. 508, the deceased was also a section hand, the whistle had been sounded at the whistling post a quarter of a mile away from the station, then again on approaching the station and again as a signal to the conductor, then after passing the station and coming in sight of the men at work, within three or four hundred feet of them, the engineer sounded the danger signal by four blasts of the whistle. This court in speaking through BURGESS, J., held that a demurrer to the evidence should have been sustained. But in the case at bar the engineer failed to sound the whistle after he came in sight of the deceased. The evidence does not show exactly how far away from the point of the accident the locomotive was when the whistle was sounded for the semaphore. Between the Milwaukee crossing

and the point of the accident was said to be between a quarter and a half mile, the semaphore was a hundred and fifty to two hundred feet west of the crossing, and the whistle was sounded far enough west of the sema-phore to warn the man in charge of the approach of the train in time to enable him to give the signal. It would not be unreasonable to estimate that the distance from where the whistle sounded for the semaphore was a half mile from the place of the accident, and that was the last signal given by the whistle until it was too late for a sig-nal to do any good. If the engineer in this case had used the whistle as did the engineers in the Evans and Sharp cases above referred to, it is very probable the plain-tiff's husband would not have been killed. This case differs essentially from those and other cases in which we have said the demurrer to the evidence should have been given.

Under the evidence in this case the court could not have refused to submit to the jury the question whether the engineer and fireman saw the man in time to have saved his life by the exercise of ordinary care. The court did not err in refusing the instruction in the nature of a demurrer to the evidence.

2. Among the instructions given for the defendant was the following:

"4. Unless the jury believe from the greater weight of the evidence that the defendant's engineer in charge of the locomotive which struck the deceased, willfully, wantonly or recklessly ran deceased down and killed him your verdict must be for the defendant."

The trial court assigned the giving of this instruc-tion as its reason for sustaining the plaintiff's motion for a new trial. The learned trial judge was right in condemning that instruction.

If the engineer saw the man in a position of danger, apparently inattentive to the approaching train, and if, with the means at hand, by the exercise of ordinary care, he could have given him timely warning, yet neglected to

do so, then the case falls within the exception to the rule that a plaintiff can not recover if his own negligence has contributed to his injury. In discussing that exception to the general rule the courts have characterized the conduct of an engineer under such circumstances as reckless, wanton or willful; but those are words of characterization expressing a conclusion, a judgment; the fact upon which that conclusion is based is the neglect of the engineer under the given circumstances to exercise ordinary care with the means at hand to avert injury.

It is the duty of the court by instructions to submit to the jury questions of fact and enlighten them as to the legal effect to be given to the facts when found. When a man has committed certain acts we say that he has been guilty of negligence, but when we submit the case to a jury we do not say if you find that the defendant has been guilty of negligence you should find for the plaintiff, but we define negligence in the instructions, and say to the jury, if you find that the defendant has done certain acts in the manner covered by that definition, then he has been guilty of negligence and you should find accordingly. Under our law there are no degrees of negligence; there are degrees of care, and a failure to exercise the degree of care required under the circumstances is negligence. Sometimes in the discussion of cases that have come before this court we have applied the term "gross negligence" to an act in question. But in instructions to the jury courts should define the word negligence only and not obscure the definition by the use of adjectives. If an instruction should say to the jury, although you may believe from the evidence that the plaintiff was himself guilty of negligence that contributed to his injury, yet if you also find that the defendant recklessly, wantonly or willfully ran him down and killed him you should find for the plaintiff, that would be giving the jury license to render a verdict based on their individual conceptions of what

were the proper adjectives to apply to the conduct. A railroad company's attorney would never sanction an instruction of that kind. Yet this instruction 4 is only the converse of that proposition; it tells the jury that unless they find that the engineer willfully, wantonly or recklessly ran the deceased down and killed him the verdict should be for the defendant.

In the argument before the jury counsel for defendant read this instruction and said, "That means everything that the taking of human life means. It means murder, it means—" Objection was interposed by the plaintiff, but the objection was not sustained. The counsel making the statement withdrew it, but resuming his argument again repeated it saying, "That means everything that the taking of human life means." Objection by plaintiff was again interposed, but was not sustained.

That instruction was erroneous and hurtful to the plaintiff's case; the court correctly ruled when it sustained the motion for a new trial on that account.

The sixth instruction given for the defendant is as follows:

"If the jury believe from the evidence that Joseph Hinzeman was section foreman, and as such had charge of the section of defendant's road where he was struck; that the train which struck him passed over this section, about the same time every morning, going east; that said deceased had his pick and was going along between the tracks of defendant marking defective ties which were to be taken out by his men; that he was walking between defendant's tracks, in a place of safety, and suddenly stepped upon or close to the track on which said train was running; and thereby sustained the injuries complained of; that after he became in peril of being struck by said train, it was too late to stop the train thereafter, and avoid the injuries aforesaid, by the exercise of ordinary care upon the part of defendant's

servants, then the plaintiff is not entitled to recover, regardless of all other facts in the case.''

That instruction is also erroneous in this, it seems to limit the duty of the defendant in the emergency named to stopping the train, and says that if when the peril was discovered it was then too late to stop the train the defendant is not liable. That leaves out of view the duty of sounding the whistle, which under the plaintiff's evidence was an obvious duty.

The trial court was justified in sustaining the motion for a new trial. The judgment is affirmed.

All concur, except *Robinson, J.,* absent.