[No. 7435.]

## MARTINEZ v. THE PEOPLE.

1. EVIDENCE—*Res Gestae*, may be defined as matter incidental to the main fact, and explanatory thereof, including acts and words so closely connected therewith as to constitute part of it; the circumstances, facts, and declarations, which spring out of the main fact, are contemporaneous with it, and serve to illustrate its character.

In the trial of an information for wilful murder the declarations of a third person, made shortly after the homicide, and attributing it to the accused, are not *res gestae.*

2. ——*Preliminary Proof.* One offering an extra judicial declaration must, as a condition precedent to its admission, establish whatever is necessary to qualify it as evidence.

3. ——*Declarations—Involuntary—Made in Sleep,* are not competent evidence against the declarant, to charge him with the crime which the declaration tends to confess. Where the evidence shows beyond doubt that at the time of making the declaration the party was sleeping and unconscious, the court should exclude it. Where there is question whether he was conscious or unconscious it should be left to the jury under instructions.

4. CRIMINAL LAW—*Waiver of Objection by Accused to Incompetent Testimony.* Even one accused of homicide may effectually consent to the admission of incompetent testimony.

5. PRACTICE IN SUPREME COURT—*Duty of Counsel.* The citation of many decisions of the courts of other jurisdictions, without noticing decisions of our own courts by which the question is already set at rest, disapproved.

*Error to Conejos District Court*—HON. CHARLES C. HOLBROOK, Judge.

Mr. CHARLES A. JOHNSON, for plaintiff in error.

HON. BENJAMIN GRIFFITH, Attorney General; Mr. CHARLES O'CONNOR, Assistant Attorney General; HON. FRED FARRAR, Attorney General, Mr. FRANK C. WEST, Assistant Attorney General, for The People.

Mr. JUSTICE GARRIGUES delivered the opinion of the court.

Jose Benedito Martinez was tried and convicted on change of venue to Conejos County, for the murder of Fortunata Campbell at Pagosa Springs. Motion for new trial was overruled, defendant was sentenced to the penitentiary and brings the case here for review.

1. The murder is alleged to have been committed about January 16, 1910. The deceased and Apolonia Gillam were at the time occupying the same house, and there is evidence showing that about midnight, they heard some one prowling around.on the outside; that the deceased went to the door and opened it, apparently for the purpose of seeing who it was, or what they wanted, when she was seized by the arm, pulled outside, and three shots fired into her body, from which she died. Apolonia Gillam testified that just before the shooting, when they heard some one outside, she went to the window and looking out, recognized the defendant; that he moved away, and the shooting occurred very shortly thereafter. The defendant testified that he knew nothing about the transaction, was at home that night, and not around the deceased's house.

Gallegos, a people's witness, testified that he was standing 50 or 75 feet from the house, and heard the shooting; that after the shots, he saw one Carillo coming from a livery barn across the creek, about 120 feet from the house, who, on coming up to him, said: "Old Ben (the defendant) has killed Fortunata Campbell." Carillo, called by the defendant, denied making the

statement, and testified that he was not present at, and did not see who did the shooting. The record is silent as to whether he heard the shots, or personally knew anything about the homicide.

Clark, a people's witness, whose deposition was admitted in evidence, testified that a few days after the shooting he slept in a bunkhouse with defendant; that about half past one in the morning, he heard him exclaim: "I shot her, I shot her, I shot her, I had to do it to save myself from the pen;" that he thought defendant was asleep, but did not know.

The prosecutor in addressing the jury said: "Carillo was going down there, and undoubtedly he saw what had taken place. * * * He came rushing up before he had an opportunity to think what he was saying, and said, 'Ben Martinez has killed Fortunata Campbell.'"

2. The statement attributed to Carillo, that Old Ben had killed the deceased, was admitted in evidence over the objection of defendant, as a part of the *res gestae*. This was error. There is no phase of the case presented to us upon which this statement was competent. Carillo was not a participant, by-stander or witness to the transaction. He was in no way connected with it, or interested in the result, as far as the evidence discloses. One offering an oral statement made out of court, must first prove the things necessary to qualify it as evidence; until this is done, it is hearsay and not *res gestae.—Salas v. People*, 51 Colo. 463, 118 Pac. 992, 37 L. R. St. (N. S.) 252.

*Res gestae* may be broadly defined as matter incidental to the main fact and explanatory of it, including acts and words which are so closely connected therewith as to constitute a part of the transaction, and without a knowledge of which the main fact might not be properly understood. They are the events themselves speak-

ing through the instinctive words and acts of the participants; the circumstances, facts and declarations which grow out of the main fact, are contemporaneous with it and serve to illustrate its character.—*Denver Tramway Co. v. Brumley,* 51 Colo. 254, 116 Pac. 1051; *Graves v. People,* 18 Colo. 177, 32 Pac. 63; *Herren v. People,* 28 Colo. 23, 62 Pac. 833; *Salas v. People, supra; McBride v. People,* 5 Colo. App. 91-98, 37 Pac. 953. That it was error to admit this evidence, we haven't the slightest doubt; but whether it was so prejudicial to defendant's rights as to warrant a reversal of the case has given us some concern. In view of another trial, we do not care to comment on the strength of the people's evidence further than to say, if the guilt of the accused was so clear and convincing as to satisfy us that the jury was not influenced by this incompetent testimony, we would not disturb the conviction. The district attorney not only made use of this improper evidence, but laid stress upon it, and emphasized it in his address to the jury as proper evidence for them to consider in their deliberations. The people's evidence is of such a character, it is impossible to say that consideration of this incompetent evidence was not an important factor in the minds of the jurors in arriving at a verdict. Under the circumstances of this case, we have concluded that its admission was error so prejudicial to the rights of the defendant that the case will have to be reversed.

In discussing the question of *res gestae,* counsel for plaintiff in error devotes one-third of his argument to this assignment, and cites 40 or 50 authorities from other states, in the face of the fact that there are not less than ten Colorado cases upon this subject, one of which, *Denver Tramway Co. v. Brumley, supra,* discusses it at length. This seeming neglect is more remarkable when it is found that our own cases are exactly in point, and support his contention. We cannot

forego expressing a strong disapproval of such a course. The first duty of counsel is to search the Colorado reports, and cite the cases from our own state in point on questions at issue.

3.   The 42nd assignment of error relates to the evidence of witness Clark regarding the exclamation of the defendant at night in the bunkhouse, and the 38th to the instruction of the court thereon.   Counsel for plaintiff in error has argued these matters, but is in no position to complain of them for the reason he waived any objection thereto when he said: "I waive the objection; and let them have the full benefit of it."   However, for the benefit of the lower court on re-trial, we will express our views on the matter.

It is the voluntary statements of a party that may be used against him.   One is not responsible for what he says in his sleep, because he is unconscious and it is not voluntary.   In 12 Cyc. 423, it is said: "Words uttered by the accused while asleep are not competent evidence against him, since he is unconscious of what he says, and it is for the jury to determine whether the accused was awake or asleep when he spoke."

The witness said that he did not know whether the defendant was asleep or awake; but thought he was asleep when he spoke.   Under such circumstances, the giving of the following instruction was erroneous:

"Verbal testimony of admissions of guilt, verbally made by defendant, when he may or may not have been conscious of what he was saying, should be considered by you with great caution; and any verbal testimony of admissions of guilt should be cautiously considered by you, but, after such cautious consideration, if you believe the truth of such testimony, you are at liberty to act upon it, and consider it, in connection with all the other evidence in the case."

By this instruction the jury were told they were at

liberty to consider an unconscious statement of the defendant. As we have said, it is only the voluntary statements of the accused that can be used against him. If defendant was asleep when he spoke, he was not conscious and the statement was not voluntary. Where there is no doubt about the matter, and the evidence shows the accused was asleep when he spoke, the statement should be excluded by the court. Where there is a question as to whether the accused was conscious or unconscious when he spoke, it should be left to the jury under proper instructions.

*Reversed and remanded.*

Decision *en banc.*