EDITH E. AMMUNDSON v. HERMAN O. FALK, SPECIAL ADMINISTRATOR, SUBSTITUTED FOR D. A. TINHOLT, DECEASED, AND ANOTHER. IRVIN AMMUNDSON, JR. v. SAME.[1]

March 18, 1949.

No. 34,774.

---

[1]Reported in 36 N. W. (2d) 521.

*Maugridge S. Robb,* for appellants.
*Freeman, King, Larson & Peterson,* for respondents.

PETERSON, JUSTICE.

Plaintiffs in separate actions recovered verdicts against the defendants for personal injuries sustained by Edith E. Ammundson as the result of an automobile collision and for consequential damages sustained by Irvin Ammundson as her husband. Defendants appeal.

The questions presented for decision are:

(1) Whether a statement as to how an accident occurred by a party, who at the time of making it was too excited to tell how it happened, is admissible as an admission;

(2) Whether the statement referred to in the preceding question is admissible as part of the *res gestae;* and

(3) Whether in an action for wrongful death (here a counterclaim for damages for wrongful death), where all the facts relative to negligence and contributory negligence are shown, the court should instruct the jury that the law presumes that decedent exercised due care for his own safety.

The collision occurred on July 20, 1945, at about 9:30 p. m. on highway No. 27 in Mille Lacs county at a point about two blocks east of highway No. 169. Pursuant to a telephone call by Irvin from a filling station at the intersection of the highways, Edith went to meet him with their car. Irvin, a soldier in World War II, was on his way home for a furlough, and Edith was expecting him. He planned to make his return something of a surprise to her and their two small children, and he did not notify her definitely about his return until he got to the filling station. Immediately upon receipt of the telephone message, Edith started from their home, which is on highway No. 27 about one mile east of highway No. 169, in their automobile. The taillight was defective, in that about one-fourth of the red glass had been removed. She thought that, because Irvin had only one duffel bag when he was home on a prior visit, he also would have only one such bag on this occasion. Other boys who resided in the vicinity and had been in the armed forces also were expected home at that time. Highway No. 27 had a tarvia surface with shoulders, and at the place where the collision occurred there were guardrails. Edith proceeded westerly thereon to a point about two blocks east of highway No. 169. She was then going at a speed of from 15 to 20 miles per hour, and defendants' car was approaching from the rear at a speed of about 50 miles per hour. She drove on the right side, and at the point mentioned she saw a man in soldier's uniform and overseas cap approaching about 50 feet ahead on foot on the right side of the road carrying two duffel bags, but she did not recognize him. At the same time that she saw the soldier the lights of defendants' automobile shone in her rearview

mirror, and defendants' car immediately collided with the rear of the Ammundson car, pushing it forward about 75 to 100 feet and causing it to roll into a ditch about 30 feet below the road. The soldier was Edith's husband, the plaintiff Irvin. She testified: "Well I just saw him [her husband], and I saw a flash [of the lights of defendants' car] in my rearview mirror, and that is all I remember."

Both Edith and Irvin testified that she did not stop or slow down. There was no direct testimony that she did. Irvin also testified that when he was 50 feet west of their car he recognized it, but did nothing to stop Edith, because defendants' car was approaching rapidly from the rear. After the collision, Irvin saw Edith injured in their car in the ditch and that gasoline had escaped from the tank. Being unable to remove her and fearing that the car might catch fire because of the gasoline, Irvin ran to the road to seek help. Some people gathered, among them Norman Schmidt, who testified that Irvin "was too excited to tell me how it happened," and that he *imagined* that Irvin told him that he (Irvin) *imagined* that Edith slowed down immediately prior to the collision.

After the accident, defendant D. A. Tinholt, the driver of the Tinholt car, committed suicide. His personal representative, who was substituted for him, asserted a counterclaim for D. A. Tinholt's wrongful death, alleging that he received injuries as a consequence of Edith's negligence which produced such mental deterioration as to cause him to commit suicide.

The trial judge submitted the case to the jury in a charge with which no fault is found on appeal, except in the particulars to be presently stated. The trial judge charged the jury that the burden of proof rested on plaintiffs to prove as part of their causes of action that D. A. Tinholt was negligent and, as part of their defense to the counterclaim for wrongful death by his personal representative, that he was guilty of contributory negligence; and that, while the jury might consider Irvin's statement to Schmidt for purposes of impeachment, the statement was "insufficient to base a finding on that the Ammundson car did slow down before the accident." A request

to charge that the presumption of law was that decedent exercised due care for his own safety was refused. Defendants contend that Irvin's statement to Schmidt constituted an admission by Irvin and also a part of the *res gestae* and that as such it was substantive evidence against both Edith and Irvin; and that, because that is true, the court erred in the instruction concerning its legal effect. Defendants also contend that in wrongful-death cases the court should instruct the jury that the decedent is presumed to have exercised due care for his own safety and that such an instruction should always be given, for the reason that, if the jury should, as it has the right to and in some cases should, reject the testimony as to contributory negligence, the presumption, for lack of evidence to the contrary, would prevail and thus compel decision, as a matter of law, that decedent exercised due care.

■ The question for decision involves the admissibility of post-accident utterances of a declarant incapable, as a matter of law, of narrating what he had observed. This question is quite aside from those arising from the conjectural and speculative nature of the utterances and from the one whether they were in any sense attributable to and binding upon Edith. According to the witness (Schmidt), to whom the utterances were made, declarant (Irvin) was incapable of telling how the collision happened, and, because that was true, the witness could relate only what he *imagined* declarant said. While the precise nature of declarant's inability to narrate was not shown, it appeared that he was suffering from mental shock produced by fear that, if the gasoline around the automobile ignited, his wife might be cremated alive in their automobile before his eyes, and by the other events of the collision. There is here no disputed question of fact as to declarant's inability to narrate what he had seen. The only evidence touching the matter is to the effect that the ability to narrate was lacking. Utterances of a party incapable of recollecting and narrating the facts to which his utterances relate are inadmissible as admissions. If the lack of such ability conclusively appears, the utterances should be excluded entirely; but if the evidence raises a fact issue as to whether it is

120

lacking the utterances should be received as admissions and their weight should be determined by the jury under an appropriate instruction. Aide v. Taylor, 214 Minn. 212, 7 N. W. (2d) 757, 145 A. L. R. 530. Lack of ability to narrate what the witness has observed amounts to what Wigmore well calls a lack of testimonial capacity. 2 Wigmore, Evidence (3 ed.) §§ 478, 479, 506. In Jacobson v. Carlson, 302 Mich. 448, 4 N. W. (2d) 721, utterances of plaintiff while dazed and *unable to answer* were held to be inadmissible as admissions. In analogous cases, the rule is well settled that where a party is so incapacitated mentally, whether by disease, intoxication, or otherwise, as to be incapable of recollecting and narrating what occurred, his utterances are inadmissible as admissions. Cannady v. Lynch, 27 Minn. 435, 8 N. W. 164 (discussion of rule) ; Martinez v. People, 55 Colo. 51, 132 P. 64, Ann. Cas. 1914C, 559, and note (words spoken while declarant was asleep) ; Hartford v. Palmer, 16 Johns. (N. Y.) 143 (witness unable to narrate because of his intoxication) ; People v. Carlin, 194 N. Y. 448, 87 N. E. 805 (declarant unable to recollect facts narrated). As a matter of law, Irvin's utterances were inadmissible as admissions, for the reason that he lacked capacity to narrate what he had observed. It is just inconceivable that a court of justice should adjudicate the rights of parties upon utterances which have no legal or logical probative value.

■ For the reason that Irvin's post-accident utterances were made when, as a matter of law, he was incapable of narrating what he had observed, such utterances were not admissible as part of the *res gestae*. The theory of the *res gestae* rule is that utterances, accompanying or forming part of a transaction or occurrence spoken spontaneously in response to nervous stimulation produced by the transaction or occurrence, are admissible to explain or characterize it. While such statements are hearsay, they derive their sanction as evidence from the fact that the circumstances of their utterance so far eliminate intention and opportunity for fabrication as to be a reasonable substitute for an oath. Roach v. G. N. Ry. Co. 133 Minn. 257, 158 N. W. 232; Lambrecht v. Schreyer, 129 Minn. 271,

152 N. W. 645; 2 Dunnell, Dig. & Supp. § 3300; Annotation, 163 A. L. R. 60. While the rule is thus broadly stated, it has obvious limitations. For example, we have held that under the rule mere inferences, as distinguished from statements of fact, are not admissible. Pacific F. Ins. Co. v. Kenny Boiler & Mfg. Co. 201 Minn. 500, 277 N. W. 226. Nor are the utterances of every declarant admissible, for the reason that, as we held in the Roach case (133 Minn. 260, 158 N. W. 234), the trial court should consider in determining the admissibility thereof "the mental and physical condition of the declarant, and other circumstances important in determining whether the trustworthiness of the unsworn statements is such that they may safely go to the jury." The plain implication is that, if the declarant's mental and physical condition is such that his statement lacks probative value, it should be rejected. While it is not necessary that the declarant should be competent as a witness if called as one (Annotations, 65 L. R. A. 318; L. R. A. 1915E, 202; 163 A. L. R. 60; 20 Am. Jur., Evidence, § 678), as the numerous cases cited in the Annotations show, applying the rule to utterances of children, husband and wife, convicts, slaves, and others incompetent as witnesses (see State v. Findling, 123 Minn. 413, 144 N. W. 142, 49 L.R.A.[N.S.] 449), an utterance is not admissible as part of the *res gestae* unless the party making it had the capacity of recollecting and narrating the facts to which his utterance relates. Martinez v. People, 55 Colo. 51, 132 P. 64, Ann. Cas. 1914C, 559, *supra;* Steurer v. Ried, 56 Ill. App. 245; Plummer v. Ricker, 71 Vt. 114, 41 A. 1045, 76 A. S. R. 757; see, Carroll v. Knickerbocker Ice Co. 218 N. Y. 435, 113 N. E. 507, Ann. Cas. 1918B, 540. Wigmore expresses the view that the declarant "must at least not lack" such testimonial qualification. 6 Wigmore, Evidence (3 ed.) § 1751. We so hold. Irvin's utterances were not admissible as part of the *res gestae.* They lacked probative value entirely.

■ Under the rule of Ryan v. Metropolitan L. Ins. Co. 206 Minn. 562, 289 N. W. 557, an instruction that there is a presumption that decedent at the moment of death was in the exercise of due care should not be given in a civil case. Duff v. Bemidji Motor Service

Co. 210 Minn. 456, 299 N. W. 196. As said in Donea v. Massachusetts Mut. L. Ins. Co. 220 Minn. 204, 213, 19 N. W. (2d) 377, 383:

"* * * Where there is evidence justifying a finding contrary to the presumed fact, the judge should say nothing about the presumption, since it is then out of the case, and should leave it to the jury to find the existence or nonexistence of the presumed fact upon all the evidence exactly as if there never had been a presumption at all."

Defendants contend that the statement of the rule in the cited cases fails to take into consideration a situation where the evidence as to decedent's alleged contributory negligence is *in equilibrio* or the jury disbelieves it, and that in such a situation the presumption would compel decision that the deceased was not guilty of contributory negligence, citing the following language from the Ryan case (206 Minn. 570, 289 N. W. 561):

"* * * To illustrate, the evidence of suicide may consist wholly of testimony which the jury may discredit. In such a case it would be proper to charge them that, if they did reject all such evidence as incredible, it would be their duty to find the death accidental. That would be by reason of the presumption, as a rule of law, operating on unopposed facts. The discredited evidence rejected, the presumption is brought into operation, not as evidence, but as law controlling decision."

In Moeller v. St. Paul City Ry. Co. 218 Minn. 353, 16 N. W. (2d) 289, 156 A. L. R. 371, we held that, where the jury by its verdict showed that it rejected the testimony of the only eyewitness as to decedent's conduct, the presumption of due care on decedent's part prevailed. Here, the situation is the converse of that in the Moeller case. If it be conceded, as it is contended here, that such an instruction should be given under the circumstances mentioned in the quotation from the Ryan case, *supra,* refusal to give it here did not prejudice defendants, for the reasons that the burden of proof was on plaintiffs to establish, both as to their causes of action and as to their defenses to the counterclaim for wrongful death, that de-

cedent was negligent, and that the jury by its verdict showed that it adopted the version of plaintiffs' witnesses, thereby establishing that it affirmatively found as a fact that decedent was negligent and that plaintiffs were not. See, Ralston v. Tomlinson, 207 Minn. 485, 292 N. W. 24; Peterson v. Minnesota Power & Light Co. 206 Minn. 268, 288 N. W. 588. Under such circumstances the presumption was overcome, and its submission to the jury would have amounted to authorization for the jury to consider it as evidence— a makeweight in favor of defendants, which it clearly was not. See, Ryan v. Metropolitan L. Ins. Co. *supra.*

In conclusion, we think that the post-accident utterances of Irvin were not admissible at all as admissions or as part of the *res gestae;* that the trial court's ruling that the utterances might be considered by the jury as impeachment of Irvin was more favorable to defendants than they were entitled to; and that there was no error in refusing to charge as requested.

We should add, as a caution, that utterances otherwise admissible as admissions or as part of the *res gestae* should be excluded upon the ground that declarant lacked capacity to recollect and narrate what he had observed only where such incapacity appears as a matter of law, as it does here, and that in other cases they should be received to be considered under appropriate instructions and given such weight as the jury deems them entitled to.

Affirmed.