M. L. GOUGH, Respondent,

v.

GENERAL BOX CO., a corporation, Appellant.

No. 45208.

Supreme Court of Missouri, Division No. 2.

May 13, 1957.

Rehearing Denied June 10, 1957.

Alexander & Robertson, Louis A. Robertson, Ernest E. Baker, St. Louis, Joseph B. Wentker, St. Charles, for appellant.

Wilbur C. Schwartz, St. Louis, Robert Niedner, St. Charles, for respondent. Joseph Nessenfeld, St. Louis, of counsel.

STOCKARD, Commissioner.

On August 27, 1950, plaintiff's eastbound tractor-trailer and defendant's westbound tractor-trailer collided on Cole Creek bridge near St. Charles, Missouri, on by-pass Highway 40. The jury returned a verdict in favor of plaintiff in the sum of $20,000 and defendant has appealed from the ensuing judgment. The parties will be referred to as in the trial court.

The principal controverted issue of fact at the trial was whether the collision occurred on plaintiff's or defendant's half of the highway. At the time of the collision it was nighttime and raining. As the two vehicles approached each other, each was on its proper side of the highway, and neither was being operated at an excessive rate of speed. Each driver was aware of the approach of the other. When plaintiff's vehicle was about halfway across the Cole Creek bridge, defendant's vehicle started to enter upon the bridge. The tractors passed each other without incident. It is plaintiff's contention that defendant's trailer then "turned or jackknifed to the left, partly onto plaintiff's side of the road and into collision with the front part of plaintiff's unit." Defendant contends that no part of its equipment got to the left of the centerline of the highway, and that plaintiff turned his truck into its vehicle. The damage done to the vehicles indicates that the left front of plaintiff's tractor came into violent contact with the forward left side of defendant's trailer. Further facts will be developed in the course of the opinion.

Defendant asserts on this appeal, among other things, that the trial court erred in permitting Dr. Crider to testify what plaintiff told him was the cause of the accident. This testimony was hearsay, but was admitted by the trial court as a part of the res gestae. Plaintiff contends that (1) the point is not properly before this court for review because no proper objection to the testimony was made at the trial, (2) the assignment of error in defendant's brief is for a reason different from that assigned at the trial and defendant is limited on this appeal to the objection stated at the trial, and (3) even if not properly admitted as a part of the res gestae, the testimony was admissible "as a prior consistent statement."

The accident occurred about one or one and one-half miles west of the city of St. Charles at about eleven o'clock (daylight

time) in the evening of August 27, 1950. It is conceded that plaintiff was rendered unconscious as the result of the collision. Shortly thereafter other motorists arrived on the scene, and plaintiff was taken to a hospital in St. Charles. The distance to the hospital is not shown. Dr. Crider first saw plaintiff about one and one-half hours after the accident. After the doctor had testified concerning plaintiff's injuries, which were severe, and the treatment he administered, he was asked, "What was the first thing that he said to you of any importance about this occurrence?" Defendant's objection was as follows: "I am going to object to any statement or statements made by the plaintiff in this case outside of the presence of this defendant. It would be self-serving, hearsay and incompetent." Counsel for plaintiff then stated that the testimony was offered as a part of the res gestae, and that he "expected" to show that plaintiff was unconscious all the way to the hospital. The trial court permitted defendant to cross-examine the doctor at that time, and it was thereby brought out that the hospital records showed that plaintiff was brought by Mr. Runge and Mr. Hollrah to the hospital at 10:30 o'clock p. m. (apparently this time reference was to standard time); the doctor arrived at the hospital about fifteen minutes after he received an emergency call; the doctor treated plaintiff while he was "under a local"; plaintiff "appeared" to the doctor to be conscious because when spoken to he answered and that "would indicate" that he was conscious; and the doctor inquired of the plaintiff what happened to him in an attempt to get his mind off of what the doctor was doing and allay his fears but not to determine what treatment he should give.

The trial court interrupted the cross-examination to overrule defendant's objection. The doctor then testified that in reply to his question, "What happened to you?" the plaintiff stated that "a truck had jackknifed into him" and that the last thing he remembered was a trailer coming down on top of him and he ducked. The doctor made no note of this statement by plaintiff on the hospital record as constituting a part of the history of the case.

■ There is no merit to the contention of plaintiff that no proper objection was made at the trial. Defendant's objection was, among other things, that the testimony of the doctor as to what plaintiff said was hearsay, and the testimony clearly was hearsay when offered to prove the truth of the facts contained in the statement. The trial court so understood the objection and so do we. The burden then was on the plaintiff to make a sufficient showing that the statement was admissible as an exception to the hearsay rule. Woods v. Southern Ry. Co., Mo.Sup., 73 S.W.2d 374; Sconce v. Jones, 343 Mo. 362, 121 S.W.2d 777; Roush v. Alkire Truck Lines, Inc., Mo.Sup., 299 S.W.2d 518.

■ Neither do we agree with plaintiff that the only objection assigned in defendant's brief is for a reason different from that assigned at the trial. Defendant's point in its brief is poorly worded, but it is readily apparent, even by a casual reading, that it assigns as error the action of the trial court in permitting the testimony of the doctor as to a statement made to him by plaintiff because the testimony was hearsay. This was sufficient to present to this court the contention that the referred to testimony was inadmissible for the asserted reason. Defendant also contends, perhaps unnecessarily, that the statement was not admissible as an exception to the hearsay rule because it was made "long after the accident and after plaintiff had discussed the accident in a car on the way to the hospital with other persons."

■■ Plaintiff cites Piehler v. Kansas City Public Service Co., 360 Mo. 12, 226 S.W.2d 681, 684, in support of his position that the testimony of the doctor was admissible as a "prior consistent statement." In that case it was held that evidence of prior statements of a witness consistent with his testimony at the trial may be of-

fered for the purpose of rehabilitating the witness when he has been impeached by the showing of prior inconsistent statements. Plaintiff admits that it is "debatable" whether he had been impeached. His testimony at the trial was that defendant's truck "jackknifed" and hit his truck. On cross-examination of plaintiff, the defendant brought out that in a statement written by another but signed by plaintiff, he supposedly said that "a transport truck sideswiped me causing it to turn over and sustain the above injuries and completely wrecked my truck." Plaintiff denied making "all that statement." Under the circumstances of this case and the evidence concerning the damage done to the two vehicles, we do not consider the statement that defendant's truck jackknifed and hit plaintiff's truck to be inconsistent with the statement that defendant's truck sideswiped plaintiff's truck. However, in any event, testimony of a prior consistent statement is not admissible as proof of the facts stated. Hammond v. Schuermann Building & Realty Co., 352 Mo. 418, 177 S.W.2d 618. Plaintiff specifically offered the testimony of the doctor, and the trial court admitted it, as part of the res gestae, that is, as proof of the facts stated, and it was admissible for that purpose, if at all, only on the basis that it constituted an exception to the hearsay rule as a part of the res gestae.

We shall first dispose of defendant's contention that the statement was improperly admitted because it was made after the plaintiff had discussed the accident with other persons in a car on the way to the hospital. At the time the testimony of the doctor was offered, plaintiff's counsel stated that he expected to show that plaintiff was unconscious all the way to the hospital. It was not until rebuttal that he attempted to make that showing. Plaintiff then called as his witness Theodore B. Runge who had taken him to the hospital. Runge was assisted and accompanied by two friends by the name of Mossman and Hollrah. Runge testified as follows:

"Q. You put him [plaintiff] in the back of your car? A. Well, a couple of fellows, my buddy and whoever was there with me.

"Q. Mossman and Hollrah, A. Yes.

"Q. Was he conscious? A. No; Hollrah was sitting on the back seat and this fellow was saying, 'What in the world happened?' and we explained to him what happened and it went on all the way to St. Charles.

"Q. After you got him to St. Charles, what did you do? A. Took him to the hospital, the back door."

▮ Plaintiff contends that this testimony does not show that he asked "What in the world happened," but that the words "this fellow" refer to Mossman. We cannot agree. This testimony clearly indicates that plaintiff was unconscious when he was placed in Runge's automobile, but that while on the trip to St. Charles, in response to questions by plaintiff, Runge and his two companions explained to him what had happened. However, this testimony was not before the trial court when it ruled on the admissibility of the testimony of the doctor, and when this testimony of Runge subsequently was admitted defendant did not move to have the doctor's testimony as to plaintiff's statement stricken out, nor did it request that the trial court reappraise its previous ruling as the result of this new testimony. If the trial court's ruling was correct at the time it was made, we should not now convict it of error because subsequently there was admitted other testimony which would have resulted in a different ruling if it had been before the court when this ruling was made. Therefore, in determining if the admission of the hearsay statement was error, we shall not take into consideration the above quoted testimony of Runge.

Although necessity is not generally recognized as an essential element of the res gestae exception to the hearsay rule, VI Wigmore, Evidence, 3rd ed., § 1748, there can be no question but that in those cases where the declarant was the injured person and was dead at the time of trial, a liberal application of the res gestae exception has sometimes resulted. For example, see Johnson v. Southern Railway Company, 351 Mo. 1110, 175 S.W.2d 802. But also see the criticism of this case in 163 A.L.R. at page 156. In any event, there was no necessity in this case of resorting to the hearsay statement as proof of the facts therein contained. The declarant was the plaintiff and he was present and available as a witness and he did testify.

■ Wigmore has stated the exception known as res gestae, and the reason that utterances made within the exception are considered to have special trustworthiness, as follows: "This general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts." VI Wigmore, Evidence, 3rd ed., § 1747. This so-called "shock test" has not met with universal approval, see 163 A.L.R. at pages 90 and 140, but it has been cited and quoted with approval in this state. Sconce v. Jones, 343 Mo. 362, 121 S.W.2d 777, 781.

"The essential test of this class of statements is spontaneity", and in determining whether the statement is admissible under this rule "the true test is neither the time nor the place of the statement but whether [under the circumstances] it is a spontaneous statement produced by the event itself." Sconce v. Jones, supra; Vol. VI, Wigmore, Evidence, 3rd ed., § 1750. The question in this case is whether plaintiff met the burden of showing that the hearsay testimony was admissible by reason of the res gestae exception.

According to the testimony of the plaintiff, at the time he is supposed to have made the statement to the doctor he was unconscious, or at least, he had been rendered unconscious by the force of the collision and he "didn't know anything until the next morning, at seven o'clock." He specifically testified that he did not know how he got to the hospital, and that he did not remember anything that was done to him at the hospital until eight hours after the collision. However, after so testifying, plaintiff offered the doctor as his witness who testified, as proof of the facts related, that one and one-half hours after the collision plaintiff told him the cause of the accident.

■ If we accept that testimony of plaintiff, which tends to establish the circumstances under which this statement was made, as evidence to establish its admissibility as a part of the res gestae, the statement of the plaintiff as related by the doctor clearly was inadmissible. While it is true that a res gestae utterance is not made inadmissible because the declarant was under the influence of shock, Sconce v. Jones, supra, and Johnson v. Southern Railway Company, 351 Mo. 1110, 175 S.W. 2d 802, and the utterance is not made inadmissible for the reason that the declarant is not qualified to testify because of infancy or some similar disqualifying reason, Vol. VI, Wigmore, Evidence, 3rd ed., § 1751, this exception to the hearsay rule does contemplate a conscious utterance.

In Ammundson v. Tinholt, 228 Minn. 115, 36 N.W.2d 521, 524, 7 A.L.R.2d 1318, it was stated that "if the declarant's mental and physical condition is such that his statement lacks probative value, it should be rejected," and further that "an utterance is not admissible as part of the res gestae unless the party making it had the capacity of recollecting and narrating the facts to which his utterance relates." It has also been stated that an utterance of one suffering from delirium tremens is not admissible as a part of the res gestae. Carroll v. Knickerbocker Ice Co., 218 N.Y. 435, 113 N.E. 507, Ann.Cas.1918B, 540. For equally sound reasons it has also been held that statements made by one while in a coma, Aide v. Taylor, 214 Minn. 212, 7 N.W.2d 757, 145 A.L.R. 530, or while asleep, Plummer v. Ricker, 71 Vt. 114, 41 A. 1045, 76 Am.St.Rep. 757, are not admissible as admissions against interest. See also Martinez v. People, 55 Colo. 51, 132 P. 64, Ann.Cas.1914C, 559, and the Note entitled, "Admissibility in Evidence of Declaration or Admission Made by Person While Asleep," in Ann.Cas.1914C at page 561. With reference to statements made by one when asleep, it was stated in Plummer v. Ricker, supra [71 Vt. 114, 41 A. 1046], that, "Words spoken while in sleep are not evidence of a fact or condition of mind. They proceed from an unconscious and irresponsible condition; they have little or no meaning; they are as likely to refer to unreal facts or conditions as to things real; they are wholly unreliable; and a jury ought not to be allowed to guess that such expressions are produced by a present mental or physical condition." The same reasoning would unquestionably apply to utterances offered as a part of the res gestae made by a person while unconscious by reason of an injury. The basic and fundamental reason for the exception, that of superior trustworthiness, is completely absent. In Siegel v. Missouri-Kansas-Texas Railroad Company, 342 Mo. 1130, 119 S.W.2d 376, 378, certiorari denied 305 U.S. 654, 59 S.Ct. 249, 83 L.Ed. 423, the plaintiff testified that he was rendered unconscious by his fall and did not know anything for quite some time later. He later purported to testify concerning certain events that occurred immediately following his fall. This court held that his testimony of events subsequent to his injury was "devoid of probative value." While the circumstances of this case are different, the principle is the same. We must necessarily conclude that a plaintiff should not be permitted to offer the testimony of a third person to prove the truth of his statement to or in the presence of that third person on the basis that it constitutes a part of the res gestae when the plaintiff himself has testified that he was unconscious at the time he made the statement.

■ It may be contended that the testimony of the plaintiff that he was unconscious need not be believed, and that the doctor testified that at the time of the utterance plaintiff "appeared" to be conscious because he replied when spoken to. There is no question but that plaintiff was rendered unconscious by the accident, and "(a)s a general rule, where the speaker is shown to have been at once rendered unconscious by the accident, his utterance made *immediately* upon regaining consciousness is not regarded as inadmissible because of the interval of time." (Emphasis added.) 163 A.L.R. at page 164. See the collection of cases on the effect of unconsciousness of the declarant in 130 A.L. R. at page 309 and in 42 L.R.A.,N.S., at page 967. Also see 20 Am.Jur., Evidence, § 672. The period of unconsciousness is not to be taken into consideration in determining the question of spontaneity as affected by the lapse of time. But in this case, assuming that plaintiff was conscious when the statement was made, there is absolutely no showing when plaintiff regained consciousness. When the testimony of the doctor was offered plaintiff stated that he intended to show that he was unconscious all the way to the hospital,

but he did not do so. If we use the testimony of Runge to show that plaintiff was unconscious when placed in a car to be taken to the hospital, we must also take into consideration Runge's testimony that on the way to the hospital plaintiff was told by Runge and his companions what had happened to him.

We do not have the situation as in Bennette v. Hader, 337 Mo. 977, 87 S.W.2d 413, 416, 101 A.L.R. 1190, where an utterance "was made 'just a minute' after declarant became conscious, at the scene of the accident, while he was suffering pain, * * * while parties were gathering at the scene, before the excitement had subsided, * * *." Neither do we have the situation in Hinzeman v. Missouri Pacific Railway Company, 182 Mo. 611, 81 S.W. 1134 and Mills v. Missouri Pacific Railway Company, 199 Mo. 56, 94 S.W. 973, 974, (both cases involve the same occurrence) where immediately upon regaining consciousness the injured person said " 'What hit me?' " There the utterance was admitted as a part of the res gestae as proof that the injured person did not know what hit him. In the Mills case the court stated: "It [the utterance] was made on the spot and in the presence of the witnesses to the transaction. His mind apparently took up the thread of his life precisely at the point it was broken when struck by the locomotive, and the first instinctive and spontaneous inquiry was, 'What hit me?' " For other similar situations in which an utterance made immediately after the declarant regained consciousness was held to be admissible as a part of the res gestae, see Christopherson v. Chicago, Milwaukee & St. Paul Railroad Co., 135 Iowa 409, 109 N.W. 1077, 124 Am.St.Rep. 284; Clark v. Davis, 153 Minn. 143, 190 N.W. 45; Nawn v. Boston & Maine Railroad, 77 N.H. 299, 91 A. 181; Britton v. Washington Water Power Company, 59 Wash. 440, 110 P. 20, 33 L.R.A.,N.S., 109, 140 Am. St.Rep. 858.

It is true that the testimony of the doctor showed that plaintiff was badly injured and undoubtedly he was in pain, if he was conscious, but severe injuries and pain alone are not sufficient to make a statement admissible as part of the res gestae. 130 A.L.R. at page 310. Other matters which affect the admissibility of the statement must be considered. Here the statement was made in response to a question. Although this alone would not make it inadmissible, Landau v. Travelers' Insurance Co., 305 Mo. 563, 267 S.W. 376, it is a factor entitled to consideration. However, the statement was narrative in nature, and it does not purport to have been an utterance made by plaintiff caused by the event, but actually was a narration of past events in response to a question by the doctor not brought about by the excitement of the event. Also the statement was made one and one-half hours after the accident with no showing when plaintiff regained consciousness, and it was made at a place far removed from the site of the accident and where the excitement of the scene itself could not have had any influence. As to the effect of this latter situation see the cases collected in 163 A.L.R. at pages 148–162. Under the circumstances, plaintiff did not meet the burden of showing that the extrajudicial statement was admissible as proof of the facts related on the basis that it came within the exception to the hearsay rule known as res gestae, and its admission was error.

This leaves for determination whether the error of admitting this testimony materially affected the merits of the case, and therefore was reversible. Section 512.160, subd. 2, RSMo 1949, V.A. M.S. Whether defendant's truck jackknifed and crossed over into plaintiff's side of the highway, or whether plaintiff turned his truck to the left into the side of defendant's trailer was the principal fact issue of the case. Upon the determination by the jury of that question depended the

result of the lawsuit. By its verdict the jury apparently found that defendant's truck and trailer jackknifed and hit plaintiff's truck. Plaintiff contends that defendant could not have been prejudiced because plaintiff had testified to the matters contained in the oral statement to the doctor. No cases are cited. Apparently plaintiff contends the statement was merely cumulative, but in the correct sense this is not true. It was corroborative. Hayes v. Kansas City Southern Ry. Co., Mo.Sup., 260 S.W.2d 491. It was the only oral testimony corroborative of plaintiff's testimony as to how the accident happened. We cannot determine what effect the doctor's testimony may have had in the jury's determination of the principal fact issue, and therefore we cannot say that under the circumstances here it is unlikely that the statement was prejudicial.

■ Defendant urges that the trial court erred in overruling its motion for a directed verdict, but we need not rule this matter. Defendant did not contend in its motion for new trial that the trial court erred in submitting the case to the jury. Marquand Development Corp. v. Maisak-Handler Shoe Co., Mo.Sup., 260 S.W.2d 242. Defendant also contends that an instruction was erroneous. However, in the event of a new trial respondent may choose to redraft the instruction if he deems there is merit to defendant's contention.

For the prejudicial error previously noted, the judgment is reversed and the cause is remanded.

BOHLING and BARRETT, CC., concur.

‾PER‾CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court. All concur.