24

*Charles H. Weyl* and *Lystad, Mantor & Day,* for appellant.
*Sexton, Mordaunt, Kennedy & Carroll,* for respondent.

LORING, JUSTICE.

This case comes here on appeal from an order denying defendant's alternative motion for judgment or a new trial. Plaintiff sought recovery under the provisions of 3 Mason Minn. St. 1938 Supp. § 4272-5, as subrogee, having as an insurer under the workmen's compensation act indemnified the Houston Creamery Company for its liability to the dependents of James William Nelson, an employe of that company, who was killed in the course of his employment August 16, 1937, through the alleged negligence of the defendant in exposing certain live wires without proper in-

[1] Reported in 289 N. W. 782.

sulation, with which wires Nelson came in contact and was instantly killed. At that time the Houston Creamery Company occupied and conducted its business from a single two-story brick building in the village of Houston. This building had a shingle mansard roof with dormer windows projecting therefrom above the metal gutter which ran along the eaves. The gutter was about 16 feet above the ground level and was drained by down spouts, one of which was about three feet from the window near which Nelson was electrocuted. There was evidence tending to prove that the defendant's electric current was conducted into the creamery building by means of four main feed or service wires which extended from the company's pole in the street to a bracket which it had attached to the perpendicular face of the dormer structure at a level where the lower wire was about three feet above the gutter. These wires carried a current of approximately 187 volts. The main feed wires were attached to the house wiring by means of metal clamps outside this bracket. The insulation was removed from the defendant's feed wires for the purpose of making a proper contact for the conduct of the electric current, and the feed wires had not been rewound with insulation after the connection had been made. Some testimony tended to show that at a point about six or eight inches out from the bracket there was an uninsulated place, from two to four inches long, on the lowest service wire. Apparently the gutter was substantial enough to bear the weight of a man and did so on occasions when the storm windows and screens were changed on the second story or when those windows were washed on the outside or when there was occasion to clean or repair the gutter or drain pipes, one of which was near enough to the dormer window near which the wires entered the building so that it could be reached by a man standing on the gutter, holding onto the casing of the dormer window with one hand, and reaching for the drain pipe with the other. Nelson tried to do just this and in that position was under the defendant's service wire and near the exposed uninsulated portion of the wire. Nelson got out under the wire

without coming in contact with it, but as he endeavored to get back he raised up enough so that his neck came into contact with the uninsulated part of the wire. How or why he came to do so is not disclosed by the evidence. He was covered with perspiration, his shoes were damp from working in the creamery, and one of them had a hole clear through the sole. On making contact with the wire he was instantly killed. His widow and child claimed compensation from the creamery company, which was insured with the plaintiff, which commenced making compensation in accordance with law.

The defendant contends that as a matter of law it was guilty of no negligence; that Nelson was guilty of contributory negligence and assumed the risk of the hazard which caused his death; and that the Houston Creamery Company was guilty of contributory negligence which precluded a recovery by it or its insurer.

The defendant's contention that it is, as a matter of law, not guilty of negligence which caused Nelson's death is based largely upon the argument that it could not have reasonably anticipated harm to anybody from the noninsulated condition of its wires; that the voltage of the current was so low that under ordinary conditions it would be harmless to any person coming in contact with it or at most would give but a slight shock. We think, however, that the defendant should have reasonably anticipated that workmen would be engaged in the vicinity of these wires, and that, with the defendant's special and superior knowledge of the hazards connected with the low voltage under circumstances where dampness provided a ground and therefore a circuit through which the electricity might pass from the wire through the workman to the metal gutter with fatal or injurious consequences, the question of the defendant's negligence was at least a question for the jury.

On the question of Nelson's contributory negligence, we have the fact that he had no superior or special knowledge of the hazards connected with the use of these comparatively low voltages under conditions likely to effect a circuit through his body. His

contact with the wire was doubtless inadvertent and accidental; and, while the evidence is clear as to what happened after he made the contact, there is nothing in the record to show how he came to rise high enough in his position to make the contact. There was no witness who observed him between the time when he threw down some object he had taken from the gutter until he screamed as he touched the wire with his neck. The presumption of due care was displaced by the evidence. Ryan v. Metropolitan L. Ins. Co. 206 Minn. 562, 289 N. W. 557. But we cannot say that as an inference it was not reasonably to be adopted by the jury.

Illingsworth v. Boston Elec. Light Co. 161 Mass. 583, 588, 37 N. E. 778, 25 L. R. A. 552, 553, is directly in point both on the question of negligence and of contributory negligence as well as on the hazards due to other conditions which occur and which make contact with uninsulated low tension wires dangerous. See also Theisen v. Minnesota P. & L. Co. 200 Minn. 515, 274 N. W. 617, and cases cited.

There is no evidence whatever in this record that would support a finding of assumption of the risk.

Upon the question of the contributory negligence of the Houston Creamery Company, we think the trial court was right in submitting the case to the jury. The officers of that company had no special or superior knowledge of the hazards connected with the use of a current of the voltage involved here. As was very well said by the trial court in its memorandum attached to the order denying the motion for a new trial: "Low voltage may have its own peculiar hazards, because persons who are uninformed may not appreciate its dangers."

The order appealed from is affirmed.