# OPEL L. RALSTON v. WESLEY TOMLINSON AND ANOTHER.[1]

May 10, 1940.

No. 32,350.

*Barron & Bradford,* for appellant M. D. Tomlinson.

*M. J. Daly, Jr.* and *Faegre, Benson & Krause,* for appellant Wesley Tomlinson.

*Wieland & Sullivan,* for respondent.

HILTON, JUSTICE.

Defendants, after an adverse verdict, moved for judgment notwithstanding or for a new trial. After denial, they appealed.

Plaintiff's decedent, Jason J. Ralston, was fatally injured when he was struck by an automobile operated by defendant M. D. Tomlinson and owned by defendant Wesley Tomlinson. Detailed testimony was introduced as to the circumstances surrounding the accident. Decision requires recital of only those that are decisive.

[1] Reported in 292 N. W. 24.

About 7:45 Christmas Eve, 1938, Tomlinson was driving westerly on a county road. Its entire width of 24 feet was open to travel. An inch or two of snow had fallen during the day. Defendants claim the road was slippery in spots. Plaintiff disputes this. Passing vehicles had already made a single traffic lane. The south wheel track was slightly to the south of the road's center.

Immediately before the accident Ralston was walking westerly along the south side of the road. His path was a foot or a foot and a half south of the left wheel track. He carried a lighted flashlight in his right hand.

Tomlinson estimated his speed to be 20 to 25 miles per hour as he drove near the crest of a hill, a point a short distance from the scene of mortal injury. Miss Shipley, a passenger, estimated the speed to be 25 or 30 miles per hour.

Defendants' version, stated factually, is as follows. As M. D. Tomlinson came over the crest of the hill he first observed Ralston walking along the south side of the road about 100 feet away. He took his foot from the accelerator and turned the car to the right (north) so that the left wheels were in the right or southerly track made by the previously passing vehicles. When the car was 30 or 40 feet from Ralston, Tomlinson sounded the horn. Ralston left the path he was following and, as stated in the brief, "stepped or darted across toward the north side of the road directly in front of the oncoming Tomlinson car." Miss Shipley testified that Ralston walked into the car's path but later qualified this by saying that his movements were a "little faster" than a walk. The vehicle was 10 or 12 feet from Ralston when he "darted" into the way from his position of safety. Immediately Tomlinson applied the brakes. He testified:

"I skidded right ahead for a ways, I don't think the direction of the car varied any at all until I hit him and we came together on the hill there because where we collided was on the right-hand side of the road * * * and we skidded straight down for a

distance from there and then the car skidded a little bit to the left * * * and then back off to the right."

Thus, according to defendants, the impact occurred on the right side of the road and was occasioned by Ralston's unjustifiedly leaving the path he was following. To fortify this, testimony was introduced showing that the flashlight was found on the north portion of the road. It is also pointed out that the evidence shows that the first skid marks, impressed on the road and indicated by disturbed gravel, were about five feet from the right side of the road, then to the left, and finally followed the car into the ditch 100 or 150 feet away.

Plaintiff, on the other hand, had another version. Testimony was introduced to show that Ralston's footprints, still visible in the fresh snow, extended back from the point where plaintiff claims the impact occurred for 200 or 300 feet. They terminated suddenly about 75 feet west of the crest of the hill without leading to the right or into the path made by the automobiles. Plaintiff's witness testified that the gravel was first torn up by the skidding car about "15 feet or some such matter to the east of the end of the footprints." According to the witness, the skid marks indicated that the automobile did not skid north until it was five or ten feet beyond the point where the footprints ceased. The most easterly point where the gravel was thrown up was on the tracks made by the vehicles. This, plaintiff urges, establishes that the vehicle skidded, not on the right side of the road, but on the beaten track which was partly on the south side of the road. It is also urged that the jury could conclude that defendant was driving faster than he is willing to admit from the fact that it took 100 or 150 feet to stop. Likewise, it is said that the jury could properly find that the car was being driven partly on the south side of the road.

We think that the foregoing, without more, establishes that defendants' contention that the trial court should have found in their favor as a matter of law cannot be sustained. It seems obvious that the testimony created a fact issue both as to de-

fendants' negligence and the contributory negligence of plaintiff's decedent. The jury was under no compulsion to accept the defendants' version as true or to draw the inferences that defendants urge. Had the jury given credence to defendants' testimony there would be no cause for complaint. But they were also free to conclude that the decedent was struck on the left side of the road while exercising due care and that at the time Tomlinson was not acting as a reasonable man would have under the circumstances. Any idea of "sudden emergency" is out of the case unless defendants' testimony is accepted. It also seems evident, without prolonged discussion, that the question of decedent's contributory negligence was also for the jury.

Some mention has been made of the proposition that a decedent is presumed to have used due care. As mentioned in Peterson v. Minnesota Power & Light Co. 206 Minn. 268, 288 N. W. 588, it is difficult to understand how this so-called presumption can aid the plaintiff since the burden of proof on the issue of contributory negligence is with defendant. If defendant fails to sustain the burden, a recovery for plaintiff, assuming defendant's negligence, is proper irrespective of any "presumption" of due care. As to the nature of a true presumption, see Ryan v. Metropolitan L. Ins. Co. 206 Minn. 562, 289 N. W. 557, and 24 Minn. L. Rev. 651. We think that the jury could properly find that the defendants did not sustain the burden of proof, and that is all that is required to defeat the claim of contributory negligence.

There was no error below in submitting the issues to the jury, and, the verdict being sustained by the evidence, the order appealed from is affirmed.

Order affirmed.