## RAYMOND H. TePOEL v. EDWARD LARSON.[1]

May 9, 1952.

No. 35,674.

*Freeman, King, Larson & Peterson,* for appellant.
*Lord & Walbran,* for respondent.

KNUTSON, JUSTICE.

Appeal from an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial.

Plaintiff's intestate, Russell Ray TePoel, lost his life when hit by a truck driven by defendant. The accident occurred on a road commonly known as the Oslo Road which runs in a north-south direction from the village of Kasson. The road was 29½ feet wide from shoulder to shoulder, with ditches approximately two feet deep

---

[1]Reported in 53 N. W. (2d) 468.

on each side. The surface of the road was covered with crushed rock. On the day involved, the road was covered with packed snow, but crushed rock stuck up through the snow.

Russell's parents lived on a farm on the east side of the Oslo Road about half or three-quarters of a mile south of the village of Kasson. Their farmyard was entered from the road by a driveway over a 24-foot culvert. On the west side of the Oslo Road, directly opposite the south line of the driveway, was the family mailbox.

The accident occurred on January 18, 1950, about 4:30 p. m. The day was clear and cold, the temperature being about ten degrees below zero.

Decedent was a boy aged 9½ years. On the day involved, he and his three sisters, Betty Jane, aged 13, Judith, aged 11, and Carol, aged 6, all of whom attended school in Kasson, took the school bus to the southeast edge of Kasson and then started walking home along the Oslo Road. When they had walked a short distance, they were picked up by a neighbor, Clifford Boyem, who was returning to his home, located farther south and a mile east of the Oslo Road. The four children sat in the back seat. Boyem stopped his car so that the back of it was about 10 or 12 feet south of the TePoel mailbox and with the right side of the car about two feet from the west ditch. The children got out of the right door on the west side of the car. Decedent proceeded ahead of his sisters, passing around the rear of the car, and started for the driveway to his home. When he was about in the center of the driveway, he was seen to look to the south, and thereafter he turned his course and ran more to the north. He was struck by defendant's truck, which was traveling north, some distance north of the driveway. Eyewitnesses differ as to just where the boy was struck, but the jury could find that it was some 40 feet or more north of the driveway and nearly in the east ditch. When the truck stopped, both front wheels and the right rear dual wheels were in the ditch. The left rear dual wheels were on the edge of the road, and decedent lay next to it, with his feet in the ditch and his body mostly on the ditch slope.

Defendant was a man 60 years of age. He lived three miles south of the TePoel farm on the Oslo Road. On the day involved, he was driving his 1½- or 2-ton 1935 International truck in a northerly direction at a speed of about 20 miles per hour. He saw the Boyem car approaching from the north. He saw it stop by the TePoel mailbox and saw the children get out. He knew the children and knew that they were going to cross the road to their home. Boyem testified that when he stopped defendant was about 100 to 150 feet away. Defendant testified that he "slacked up" when he saw the Boyem car stop, and that when he saw the children get out he again slacked up so that he was then going about 10 or 15 miles per hour.

■ Defendant contends that decedent was guilty of contributory negligence as a matter of law. We do not think so. When Russell emerged from around the back of the car, it was entirely consistent with his actions that he should assume that defendant would slow up or stop so as to let the children cross. While Russell was a boy of at least average intelligence, he only was 9½ years old. He is chargeable only with that degree of care commensurate with his age and intelligence. After discovering his peril, he tried to escape by running to the north, and he would have succeeded if defendant had not taken the same course. Under all the facts disclosed by the evidence in this case, it was for the jury to say whether he acted as an ordinarily prudent boy of his age would have acted under the same circumstances.

Defendant relies on Warning v. Kanabec County Co-op. Oil Assn. 231 Minn. 293, 42 N. W. (2d) 881. There are many facts in that case distinguishable from those in the instant case. In the Warning case the boy involved was a year older. He rode a bicycle from a downhill driveway directly onto a heavily traveled highway and was struck by defendant's truck. He had no right to expect that the truck which hit him would or could stop, or that it could avoid hitting him.

■ Defendant next contends that it was error to instruct the jury that there was a presumption of due care on the part of dece-

dent. As part of its charge to the jury, the court, over defendant's objection, gave the following instruction:

"It is the law, members of the jury, that a decedent, a person who was killed, is presumed to be in the exercise of due care at the time. Now, that presumption, members of the jury, is under the law an inference, a conclusion which the jurors have the privilege of drawing, but it is not mandatory on them if there is evidence to the contrary; in other words, the presumption can be rebutted or overcome if there is evidence which satisfies the jurors to the contrary."

Thereafter, the court correctly instructed the jury as to contributory negligence and the burden of proving this issue.

The proper function and use of a presumption in the trial of lawsuits continues to be the source of much confusion on the part of bench and bar alike. It is a subject on which text writers, teachers of law, and authors of legal articles have written much[2] and clarified little. The difficulty of formulating a rule that will cover all presumptions which can easily be applied in an instruction to a jury is aptly illustrated by the efforts of the American Law Institute (Model Code of Evidence) in preparing a proposed draft

[2]For some of the leading articles, see Morgan, *Some Observations Concerning Presumptions*, 44 Harv. L. Rev. 906; Morgan, *Presumptions*, 12 Wash. L. Rev. 255; Morgan and Maguire, *Looking Backward and Forward at Evidence*, 50 Harv. L. Rev. 909; Morgan, *The Law of Evidence*, 59 Harv. L. Rev. 481; Morgan, *Instructing the Jury upon Presumptions and Burden of Proof*, 47 Harv. L. Rev. 59; Morgan, *Techniques in the Use of Presumptions*, 24 Iowa L. Rev. 413; McBaine, *Presumptions; Are They Evidence?* 26 Cal. L. Rev. 519; Chafee, *The Progress of the Law, 1919-1921; Evidence*, 35 Harv. L. Rev. 302; Bohlen, *The Effect of Rebuttable Presumptions of Law upon the Burden of Proof*, 68 U. of Pa. L. Rev. 307; McCormick, *What Shall the Trial Judge Tell the Jury about Presumptions?* 13 Wash. L. Rev. 185; McCormick, *Charges on Presumptions and Burden of Proof*, 5 N. C. L. Rev. 291; Falknor, *Notes on Presumptions*, 15 Wash. L. Rev. 71.

of such a model code of evidence. Rule 704 of the proposed code[3] was a compromise between the rule advocated by the reporter (Professor Morgan), and favored by many of the advisers,[4] and so much of the so-called Thayer-Wigmore rule as it was deemed necessary to avoid the effect of the decision of the United States Supreme Court in Western & A. R. v. Henderson, 279 U. S. 639, 49 S. Ct. 445, 73 L. ed. 884. The rule adopted was unacceptable to Wigmore.[5] It is questionable whether it will be accepted by the courts.

In Ryan v. Metropolitan L. Ins. Co. 206 Minn. 562, 289 N. W. 557, after a rather exhaustive examination of our cases and other authorities, we adopted what is commonly known as the Thayer-Wigmore rule. This rule, probably first clearly expounded by Thayer,[6] was later adopted and developed by Wigmore,[7] and is

[3]"(1) Subject to Rule 703,* when the basic fact of a presumption has been established in an action, the existence of the presumed fact must be assumed unless and until evidence has been introduced which would support a finding of its non-existence or the basic fact of an inconsistent presumption has been established.

"(2) Subject to Rule 703,* when the basic fact of a presumption has been established in an action and evidence has been introduced which would support a finding of the non-existence of the presumed fact or the basic fact of an inconsistent presumption has been established, the existence or non-existence of the presumed fact is to be determined exactly as if no presumption had ever been applicable in the action."

*Rule 703 deals with a presumption of legitimacy.

[4]Morgan, *The Code of Evidence Proposed by the American Law Institute*, 27 Am. Bar Assn. J. 742; Foreword by Morgan to *Model Code of Evidence*, 52, et seq.

[5]Wigmore, *The American Law Institute Code of Evidence Rules: A Dissent*, 28 Am. Bar Assn. J. 23, 25.

[6]Thayer, Law of Evidence, 313, 339:

"* * * the essential character and operation of presumptions, so far as the law of evidence is concerned, is in all cases the same, whether they be called by one name or the other; that is to say, they throw upon the party against whom they work, the duty of going forward with the evidence; and this operation is all their effect, regarded merely in their character as presumptions."

[7]9 Wigmore, Evidence (3 ed.) § 2491:

"* * * it must be kept in mind that the peculiar effect of a presump-

followed by the great weight of authority in this country. Annotation, 95 A. L. R. 880. In the Ryan case we said (206 Minn. 568, 289 N. W. 560):

"With us a presumption does not shift the burden of proof. * * * This seems to be the point at which Mr. Morgan disagrees with the Thayer-Wigmore doctrine. His conclusion is that there should be a general rule, by 'uniform statute' if need be, 'that the sole effect of every presumption shall be to place upon the opponent the burden of persuading the trier of fact of the nonexistence of the presumed fact.' * * *

"A presumption may and frequently does shift the burden of going on with the evidence. That is to say only that it makes a *prima facie* case. If the trial stops there, without further evidence opposing the case so made, there is nothing for the jury. By nonsuit or directed verdict, the judge decides the issue as one of law. If, however, the *prima facie* case is met by adequate evidence, the case goes to the jury with the burden of proof where it was in the beginning. So the presumption is properly appraised as a mere 'procedural device' for allocation of the burden of going on with evidence. Where no further evidence is forthcoming, it requires decision as matter of law for the unopposed *prima facie* case. * * *

"It follows that if the case is one for the jurors the presumption should not be submitted as something to which they may attach probative force. The weight of the evidence is for them, to be ascertained on the scales of their experience and their judgment, rather than those of the judge. It would be an intrusion into their field to suggest that they substitute for any real evidence, or any reasonable inference therefrom, the assumed weight of something which is not evidence. A presumption not being evidence, it should

tion 'of law' (that is, the real presumption) is merely to invoke a rule of law compelling the jury to reach the conclusion *in the absence of evidence to the contrary* from the opponent. If the opponent *does* offer evidence to the contrary (sufficient to satisfy the judge's requirement of some evidence), the presumption disappears as a rule of law, and the case is in the jury's hands free from any rule."

be no more subject for such an instruction than any other non-evidentiary factor."

This decision was hailed as at least a new starting point in a field of law that had been perplexing to bench and bar alike and in which our decisions were difficult to reconcile.[8] The case has since had rather dubious treatment, and subsequent cases have given cause for doubt as to whether we still follow the Ryan case or not. The early cases seemingly followed the Ryan case without much difficulty. In Hoelmer v. Sutton, 207 Minn. 140, 143, 290 N. W. 225, 227, where we affirmed after the trial court held that decedent was guilty of contributory negligence as a matter of law, we said, citing the Ryan case:

"* * * Here there was no room to invoke a presumption of due care. It was displaced by the direct evidence."

In Standard Acc. Ins. Co. v. Minnesota Utilities Co. 207 Minn. 24, 27, 289 N. W. 782, 784, where we held that the question of decedent's contributory negligence was for the jury, we said, with respect to the presumption of due care, that "The presumption of due care was displaced by the evidence."

In State v. One Buick Sedan Automobile, 216 Minn. 129, 12 N. W. (2d) 1, and Kundiger v. Metropolitan L. Ins. Co. 218 Minn. 273, 15 N. W. (2d) 487, we held that where there is no substantial evidence to overcome the presumption it controls decision.

In Roberts v. Metropolitan L. Ins. Co. 215 Minn. 300, 9 N. W. (2d) 730, we reaffirmed our decision in the Ryan case, holding that a rebuttable presumption should not be given to the jury.

Plaintiff now contends that under the Ryan case it is discretionary with the trial court whether it should give the jury a presumption in its charge or not. This contention is predicated upon the following language in the Ryan case (206 Minn. 570, 289 N. W. 561):

"In all this we do not mean to say that in a proper case it would be error for a judge to instruct, in his discretion, that in one possible

---

[8]See, 24 Minn. L. Rev. 651.

condition a presumption would control. To illustrate, the evidence of suicide may consist wholly of testimony which the jury may discredit. In such a case it would be proper to charge them that, if they did reject all such evidence as incredible, it would be their duty to find the death accidental. That would be by reason of the presumption, as a rule of law, operating on unopposed facts. The discredited evidence rejected, the presumption is brought into operation, not as evidence, but as law controlling decision."

Plaintiff's contention finds some support in our later cases. In Lang v. C. & N. W. Ry. Co. 208 Minn. 487, 295 N. W. 57, the court instructed the jury on a presumption of due care substantially as in the case now before us. We held that, while the instruction was technically incorrect, it was not reversible error to give it in that case, because there was no evidence from which the jury could find contributory negligence; consequently, that no prejudice resulted from giving it.

In Bimberg v. N. P. Ry. Co. 217 Minn. 187, 197, 14 N. W. (2d) 410, 415, the court instructed the jury as follows:

"* * * There is *a presumption of law,* however, that the decedent, that is, Clifford Bimberg, was in the exercise of due care at the time of the accident. And that presumption of law exists because the man is dead and cannot appear in court to testify what happened at the time of the accident as far as his story is concerned."

We held that it was not reversible error, saying (217 Minn. 197, 14 N. W. [2d] 415):

"Conceding that in the instant case there may have been some evidence to justify the submission of the issue of contributory negligence, yet the giving of the instruction, which was a correct statement of the law as announced in the Ryan case, was not reversible error. It is common practice for trial courts to state propositions of law to a jury, and not uncommon for them to refer to the presumption of due care on the part of a party charged with negligence. Granted that under the rule of the Ryan case a trial court, in its discretion, may decline to refer to the presumption of

due care on the part of a decedent because it is a presumption of law rather than one of fact, the giving of such instruction without objection on the part of either party cannot taint the jury's verdict with error."

While we attempted to qualify our decision by stating that the instruction was given without objection, examination of the record in the case shows that exception to the charge was taken and that it was assigned as grounds for a new trial. It is difficult to see what further objection should have been made.

Following the Bimberg case, we held in Moeller v. St. Paul City Ry. Co. 218 Minn. 353, 360, 16 N. W. (2d) 289, 294, 156 A. L. R. 371, that giving the presumption of due care to the jury was not inconsistent with the Ryan case and did not "taint the jury's verdict."

In Donea v. Massachusetts Mut. L. Ins. Co. 220 Minn. 204, 215, 19 N. W. (2d) 377, 383, we held that "Prejudice does not result merely because a presumption is referred to," and that defendant should have made a request to the trial court at the time to instruct the jury that it should not consider the presumption; that because of defendant's failure to do so it was in no position on appeal to claim prejudice.

In Ammundson v. Falk, 228 Minn. 115, 36 N. W. (2d) 521, we held that under the rule of the Ryan case an instruction that there is a presumption that decedent at the moment of death was in the exercise of due care should not be given, following Donea v. Massachusetts Mut. L. Ins. Co. *supra,* insofar as it stated that where there is evidence justifying a finding contrary to the presumed fact the judge should say nothing about the presumption; and finally we came to the conclusion that failure to instruct on the presumption did not prejudice defendant for the reason that the burden of proof was on plaintiffs to establish that decedent was negligent.

It would seem from an examination of our cases since the Ryan case that it is neither error to give nor to refuse to instruct the jury that there is a presumption of due care.

In the case now before us, the burden rests on defendant to prove contributory negligence on the part of decedent by a fair preponderance of the evidence. If defendant sustains the required burden of proof, he should prevail irrespective of any presumption. If he fails to do so or the evidence is in equilibrium, he should lose on this issue irrespective of any presumption. Under these circumstances, the aid of the presumption is not necessary. Ralston v. Tomlinson, 207 Minn. 485, 292 N. W. 24; Peterson v. Minnesota Power & Light Co. 206 Minn. 268, 288 N. W. 588.

Where, as here, the burden of proving a fact already rests on the party against whom the presumption operates, instructing the jury that there is such a presumption of due care could be justified only on the theory that the presumption is evidence, a view followed by a respectable minority of the authorities,[9] but which we have rejected[10] and which is contrary to the great weight of authority,[11] or on the theory that more than a preponderance of the evidence is required to overcome the presumption. In Aubin v. Duluth St. Ry. Co. 169 Minn. 342, 348, 211 N. W. 580, 583, which was decided before the Ryan case, when it was considered proper to state the presumption to the jury, we said with respect to the burden of proof required to overcome it:

"* * * its [the presumption] presence only takes the place of evidence that would accomplish the same purpose. As to contrib-

[9]Annotations, 95 A. L. R. 883, 103 A. L. R. 191, 158 A. L. R. 750. See, Wyckoff v. Mutual L. Ins. Co. 173 Or. 592, 147 P. (2d) 227, and Professor Morgan's comments thereon, 23 Or. L. Rev. 269; Olshausen, *Evidence: Presumptions as Evidence—A Reply*, 31 Cal. L. Rev. 316; 2 Stanford L. Rev. 559; cf. Hale, *Comments*, 17 So. Cal. L. Rev. 48, 51; McBaine, *Presumptions; Are They Evidence?* 26 Cal. L. Rev. 519; Morgan, *Presumptions*, 12 Wash. L. Rev. 255, 269. See Annotation, 103 A. L. R. 185, respecting presumption against suicide as evidence.

[10]Ryan v. Metropolitan L. Ins. Co. 206 Minn. 562, 568-569, 289 N. W. 557, 560; Donea v. Massachusetts Mut. L. Ins. Co. 220 Minn. 204, 212, 19 N. W. (2d) 377, 382.

[11]Annotations, 95 A. L. R. 880, 114 A. L. R. 1226, 158 A. L. R. 748; New York L. Ins. Co. v. Gamer, 303 U. S. 161, 58 S. Ct. 500, 82 L. ed. 726, 114 A. L. R. 1218.

utory negligence the question still remains whether the defendant has established the claim by a fair preponderance of the evidence. The presumption in no way changes the rule. The charge said the presumption required 'clear proof.' Does this mean a higher degree of proof than by a fair preponderance of the evidence? If so, it was error."

In Duff v. Bemidji Motor Service Co. 210 Minn. 456, 299 N. W. 196, we held that since the Ryan case the presumption should not be given to the jury, but applied the rule of the Aubin case, that only the greater weight of the evidence is required to overcome a presumption, to an instruction relating to the proof required to establish contributory negligence.

Under these circumstances, the only effect of giving the presumption to the jury is to lead it to believe that even though it is convinced that defendant has sustained the burden of proving by a fair preponderance of the evidence that decedent was guilty of contributory negligence it may still decide the issue against defendant on acount of the presumption of due care. Obviously, such a result is wrong. The court's instruction on the issue of contributory negligence, if properly given, will require a finding against defendant if the evidence is in balance or fails to preponderate in his favor. The presumption cannot and should not be permitted to cast any greater burden upon defendant than he already has under such instructions.

In Ammundson v. Falk, 228 Minn. 115, 123, 36 N. W. (2d) 521, 525, where the presumption operated against plaintiff instead of the defendant, we said:

"* * * the jury by its verdict showed that it adopted the version of plaintiffs' witnesses, thereby establishing that it affirmatively found as a fact that decedent was negligent and that plaintiffs were not. * * * Under such circumstances the presumption was overcome, and its submission to the jury would have amounted to authorization for the jury to consider it as evidence—a makeweight in favor of defendants, which it clearly was not."

We now hold that, where the burden of proving contributory negligence rests on the party against whom a presumption of due care operates, it is error to instruct the jury that there is such presumption. The rule we adopted in the Ryan case does not permit the trial court to determine whether the presumption should or should not be given. Statements to the contrary in our opinions subsequent to the Ryan case are expressly overruled. The presumption, being a rule of law, under the view we have accepted, should be applied uniformly in all cases where it may be invoked at all. Otherwise, it ceases to be a rule of law and becomes merely a procedural device whereby the outcome of a case depends largely on the whims of the trial judge. We believe that it was error to give the jury the presumption in this case, for which there must be a new trial.

In view of our decision that there must be a new trial, it is not necessary to decide the other questions raised by the appeal. It is not likely that they will arise again on a new trial.

Reversed.