**Goldie M. RICHARDSON, as Trustee for the heirs of Stanley J. Richardson, Deceased, Plaintiff,**

v.

**Robert BUEHRE, Defendant.**

Civ. No. 1854.

United States District Court.
D. Minnesota,
Fifth Division.

July 5, 1957.

the judgment entered thereon, or in the alternative for a new trial.

Defendant's motions are predicated upon the following grounds: 1. The verdict is contrary to the evidence. 2. The verdict is contrary to law. 3. The trial court erred: (a) in instructing the jury with respect to the presumption of due care in favor of plaintiff's decedent; and (b) in the reception of expert testimony.

The contentions of defendant will be discussed in the order above set forth.

*1. Is the verdict supported by the evidence?* Most of the facts are undisputed. Plaintiff's decedent met death by reason of the collision of the car he was driving with the truck defendant was driving. Defendant was driving a pickup truck in a northerly direction and was followed by Arvid Hoppe driving a motor vehicle in the same direction. Decedent, proceeding south, was passed by Edward Francl, 24 years of age, who was driving a Nash automobile north, and ahead of the colliding truck. George Francl (Edward's father) was a passenger in the Nash, sitting alongside of his son. The Francls were disinterested witnesses. Edward Francl testified as follows:

"Q. [By Mr. Courtney] Could you tell us about the events that preceded the accident as far as you are concerned? A. Well, we were traveling north on this highway at a speed of between fifty and fifty five, and I noticed a couple of train cars tipped over on the side of the road, noticed them for quite a distance, and I slowed up gradually and was traveling at that slowed up— slowed up to about between thirty five and forty, was traveling at that speed for between a quarter and a half a mile, when I glanced out of the rear-view mirror. I noticed this pickup truck gaining quite rapidly, and I glanced back down at the road again, and I seen this car coming from the north, and a few seconds after that I heard brakes squeal and I heard the crash.

---

James J. Courtney & Sons, by Edward D. Courtney, Duluth, Minn., James E. Preece, International Falls, Minn., for plaintiff.

Palmer, Hood, Crassweller & McCarthy, by Robert H. Hood, Duluth, Minn., Robert E. Wynne, International Falls, Minn., for defendant.

DONOVAN, District Judge.

Plaintiff had a verdict in the instant case. Defendant has moved to vacate

"Q. Did you see the crash in your rear-view mirror? A. No, I didn't.

"Q. Was there anything unusual about the automobile proceeding south? A. No, there wasn't.

"Q. Was it in the southbound lane? A. Yes, it was.

"Q. At the time that you observed it were you looking north on the highway, straight ahead of you? A. Yes.

"Q. Were you in your own lane of travel? A. Yes.

"Q. Did you notice anything unusual as to the speed of that Plymouth automobile? A. No, I didn't.

"Q. What happened after the crash? What did you do? A. I immediately pulled off the road and stopped and ran back a little ways, and a gentleman and a woman were in a car and they just hollered that we should—shouldn't go back—we should stop and go get help.

"Q. Did you then do so? A. Yes, got back in the car.

"Q. Did you ever walk back far enough to actually get to the scene of the accident? A. No, we didn't.

"Q. Did you hear any squeal of brakes prior to the accident? A. Yes, I did, just for a moment.

"Q. Where did the truck come to rest, the front part of the truck? Was it in the northbound lane, where you were, or the southbound lane, where the Plymouth was? A. The truck was in the middle of the road. I don't know how much of it was in either lane.

"Q. It was then in both lanes? A. Yes, it was in the middle of the road.

"Q. How far to the north of the accident scene were you when you heard the crash? A. About 300 feet.

"Q. Did you come to a stop immediately then, as fast as you could? A. Yes.

"Q. [By Mr. Hood] Mr. Francl, was the highway comparatively straight and level where this accident occurred? A. Yes, it was.

"Q. Was the visibility good that day? A. It was cloudy, but the visibility was good.

"Q. Do you recall if the blacktop was dry? A. Yes, it was.

\* \* \* \* \* \*

"Q. And as I understand it, you were driving in a northerly direction? A. Yes.

"Q. Ahead of the pickup truck. A. Yes.

"Q. Were you observing this pickup truck in your rear-view mirror? A. No. I just happened to glance up at the mirror, and I seen it gaining pretty fast.

\* \* \* \* \* \*

"Q. You say you were driving in your own half of the road? A. Yes.

"Q. And the pickup was traveling in its own half of the road? A. At the time I seen it, it was. I just seen it for a moment when I glanced up in the mirror.

"Q. At that time the pickup was traveling in its own half of the road? A. At that time it was, yes.

"Q. And that was the same half of the road that you were driving in? A. Yes.

"Q. You say you saw the Richardson car approaching from the north? A. I just happened to notice it. I didn't notice anything particular about it.

"Q. Was there anything unusual about that car that drew your attention to it? A. No, there wasn't.

"Q. How about its speed? Isn't it a fact that it was traveling about eighty miles per hour? A. I cannot estimate in miles per hour, but

it was traveling about—it was traveling fast, about the same speed as the rest of the traffic that we had been meeting all day.

\* \* \* \* \* \*

"Q. The last time that you saw the pickup in your rear-view mirror, it was in the same half of the road that you were driving in? A. Yes.

"Q. And that was just before this collision occurred? A. Well, I seen it coming up pretty fast. I don't know how far away he was when I noticed it. It was a considerable distance."

Arvid Hoppe did not see the approach of decedent's car. On this straight stretch of highway, had Hoppe looked, he should have seen decedent's car as it passed the Francl car. The jury obviously gave some thought to this blind spot in Hoppe's testimony. It is more likely he felt secure with the pickup truck ahead of him, and paid more attention to it than to decedent's car passing the Francl car.

In this situation the trial court is governed by Rule 61 of the Federal Rules of Civil Procedure, 28 U.S.C.A. A verdict for defendant on the facts finds evidentiary support customarily present in this type of case. The triers of the facts, however, returned a verdict for plaintiff, who had made out a fact case for the jury. The trial court cannot substitute itself for the jury in this respect. The allocation of fault and blame in determining proximate cause in the instant case was peculiarly within the province of the jury. Credibility of witnesses and the truth and accuracy of testimony are questions for the jury's consideration. This cannot be more clearly expressed than in the words quoted from a decision of the U. S. Supreme Court [Ellis v. Union P. R. Co., 329 U.S. 649, 67 S.Ct. 598, 91 L.Ed. 572] in Dealer's Transport Co. v. Werner Transp. Co., 8 Cir., 203 F.2d 549, at page 552:

"The choice of conflicting versions of the way the accident happened, the decision as to which witness was telling the truth, the inferences to be drawn from uncontroverted as well as controverted facts, are questions for the jury."

Clearly these were jury questions, and the evidence is sufficient to sustain the verdict.

*2. Is the verdict supported by law?* The jury has made its choice from the evidence introduced during trial of the case. In considering the verdict arrived at, the court on a motion based on the claimed insufficiency of the evidence must view the evidence in a light most favorable to the plaintiff. Railway Express Agency, Inc. v. Mackay, 8 Cir., 181 F.2d 257, 259, 19 A.L.R.2d 1248; Waylander-Peterson Co. v. Great Northern Ry. Co., 8 Cir., 201 F.2d 408, 37 A.L.R. 2d 1399; Dealer's Transport Co. v. Werner Transp. Co., supra; Rule 61, Federal Rules of Civil Procedure. In the opinion of the court the verdict is supported by substantial evidence.

*3. Did the court err (a) in instructing the jury with respect to the presumption of due care in favor of plaintiff's decedent; and (b) in the reception of expert testimony?*

(a) Presumption of due care. In Dealer's Transport Co. v. Werner Transp. Co., supra, 203 F.2d at pages 555, 556, appellant insisted that the trial court erred in instructing the jury that: "\* \* \* A person who is killed in an accident is presumed to have acted with due care to insure his own safety. \* \* \*". Deciding defendant's point 3(a) adversely, the court said:

"The decisions of the Supreme Court of Minnesota as to instructions on the question of presumptions are admittedly confusing. But in the case of Shell Oil Co. v. Kapler, 235 Minn. 292, 50 N.W.2d 707, 713, decided December 21, 1951, a few days only after Judge Nordbye's opinion, supra, D.C., 102 F. Supp. 670, in this case, the Court say:

" 'The limited function of a presumption as a procedural device has been pointed out with clarity in a number of Minnesota decisions and will not be discussed here. It is enough to point out that a presumption is merely a procedural device for controlling the burden of going forward with the evidence and that it has no additional function other than the limited one of dictating the decision where there is an entire lack of competent evidence to the contrary. * * *.' * * *

"If it is a procedural question then it is controlled by federal law, and in Northern Pac. Ry. Co. v. Haugan, 8 Cir., 184 F.2d 472, 479, this court say: 'There is a presumption that a dead man exercised due care for his own safety.' "

It is a post-coincidence that at the last term the Minnesota Legislature enacted and approved M.S.A. § 602.04 on April 29, 1957. It reads as follows:

"[602.04] Presumption of due care in certain actions

"Section 1. In any action to recover damages for negligently causing the death of a person, it shall be presumed that any person whose death resulted from the occurrence giving rise to the action was, at the time of the commission of the alleged negligent act or acts, in the exercise of due care for his own safety. The jury shall be instructed of the existence of such presumption, and shall determine whether the presumption is rebutted by the evidence in the action."

The decision of the Eighth Circuit Court of Appeals in Dealer's Transport Co. v. Werner Transp. Co., supra, charts an accurate course of the applicable law. Prior to this decision bench and bar tended to ignore the blazed trail of *stare decisis* (as if anticipating the later expression of the Minnesota Legislature in said section 602.04, supra), and it controls as the law and procedure in the instant case.

Defendant cites TePoel v. Larson, 236 Minn. 482, 53 N.W.2d 468, 471, decided May 9, 1952. The latter case, no doubt,. was considered by the Court of Appeals. of the Eighth Circuit when it quoted Minnesota law governing the type of presumption here in question, and pointed out its limited function to amount merely to "a procedural device".

There is no error in the charge as. given by the court. The charge challenged by defendant must not be taken out of context. It must be considered fully and exactly as the jury was instructed. The same is true of the expert. testimony complained of by defendant. which we will next discuss.

■ (b) Reception of expert testimony. The court gave its customary charge on expert testimony instructing the jury that the "testimony of an expert like that of any other witness is to be received by you and given such weight as you think it entitled to". Defendant's. criticism of the reception of testimony, given by seasoned and experienced state patrol officers who arrived at the site of the accident shortly after it occurred, in my judgment does not constitute prejudicial error. They described what they saw at the site. They measured the skid marks. They observed the position and location of the colliding vehicles after coming to rest. Proper foundation for opinion evidence was established, and in the court's charge the jury was told that "there is no rule of law which requires. you to surrender your own judgment to that of any person testifying as an expert witness". The instruction on expert testimony makes the opinion of the witness so innocuous that resort thereto never ceases to amaze the trial court. Nonetheless the patrol officers were qualified experts and as such kept within the law governing the subject matter discussed by them.

It is the considered opinion of the court that the record is devoid of prejudicial error. The issues of fact were properly submitted to the jury by instructions thoroughly discussed in cham-

bers prior to submission of the case to the triers of the facts. In the court's charge the benefit of the presumption of due care was given plaintiff and defendant. Brevity was freely chosen over verbosity.

The briefs and oral arguments of counsel have been considered and authorities cited in support of the motion have been reviewed and found distinguishable from the instant case.

Defendant's blended motion must be and the same is denied.

It is so ordered.

Defendant is allowed an exception.