**Andora P. HANSON, Trustee for the Next of Kin of Osbjorn Hanson, Decedent, Appellant,**

v.

**Leonard ROE and Mabel Roe, Respondents.**

No. C3–85–187.

Court of Appeals of Minnesota.

Aug. 27, 1985.

Andrew J. Wambach, Jr., Mahnomen, for appellant.

Daniel L. Hull, Moorhead, for respondents.

Heard, considered, and decided by PARKER, P.J., and HUSPENI, and FORSBERG, JJ.

## OPINION

HUSPENI, Judge.

Appellant, Andora P. Hanson, trustee for the next of kin of decedent Osbjorn Hanson (Hanson), brought this action against respondents Leonard and Mabel Roe, alleging that the Roes' negligent maintenance of a stairway in their home caused Hanson's death. The jury determined that Hanson was negligent and the Roes were not. Appellant's motion for a new trial or for judgment notwithstanding the verdict was denied. We affirm.

## FACTS

Hanson had lived with the Roes for seven years before his death at age eighty. The Roes live on a farm in rural Gary, Minnesota. Mr. Roe retired from active farming in 1980. Prior to that time, Hanson had worked as a farm laborer for the Roes and in exchange received room and board. Hanson continued to live with the Roes after Mr. Roe's retirement from farming. Hanson liked to keep busy, and did a few chores around the house and farm. Testimony of the Roes indicated that Mr. Roe had talked to Hanson about moving to a "home," that Hanson indicated that he did not want to leave, and that the Roes "did not have the heart to tell him to go."

The accident which is the subject of this lawsuit occurred on September 10, 1983, around midnight. Hanson's bedroom in the Roe home was located on the upper level of the house at the top of the stairway. The Roes' bedroom was on the ground floor, and they were sleeping there at the time of the accident. They both heard a single sound. Mr. Roe testified that the sound was "like a pillow hitting the bottom of the stairway." They found Hanson, conscious after a fall, at the bottom of the stairs. Paramedics were called immediately. Hanson had dislocated his neck and he died of pneumonia on September 16, 1983. The Roes never discussed with Hanson how the accident occurred.

The Roe home was built by Mr. Roe's grandfather in 1886. Mr. Roe had lived in the house since he was two years old; he was sixty-five at the time of the trial. His testimony indicates that, prior to Hanson's accident, no one had fallen on the stairs. From the time the house was built until the time of the accident, the stairway to the upper level was not altered.

There are several bedrooms on the upper level of the Roe home. Hanson's room is at the head of the stairs. There is a small landing right outside the room. The stairwell is open. There is a railing at the head

of the stairs on the side of the stairwell opposite Hanson's door and to the right of the door. The stairs are bare unwaxed wood. There is a light in Hanson's bedroom and another in the hall which illuminate the stairway. The switch for the hallway light is located at the end of the hall opposite from Hanson's room.

At the time of the accident, the stairway did not have a handrail. After the accident, the Roes installed a handrail along the stairs. At her deposition, Mrs. Roe testified that the stairway had not been changed since the accident. At the end of the deposition, Mrs. Roe waived her right to review a transcript of the deposition. The Roes assert that appellant's counsel was notified regarding the inaccuracy in Mrs. Roe's testimony as soon as the inaccuracy was discovered the day before trial.

The record reflects that, even though Hanson was of an advanced age, his ability to walk had not significantly decreased. The record is uncontroverted that he did not have any difficulty in negotiating the stairs. He had eyeglasses which he had left downstairs on the night of the accident.

Hanson liked to drink coffee, especially at night. He usually made at least one trip during the night to the only bathroom in the Roe home, located on the ground floor. Generally, instead of turning on his bedroom light which would illuminate the stairway, Hanson used a flashlight. Mr. Roe testified that he had told Hanson several times to turn on the bedroom light rather than use a flashlight.

On the night of the accident, Hanson was using a flashlight. Neither Mr. nor Mrs. Roe can recall if Hanson's bedroom light was on. Mr. Roe testified that he checked the light later and that it did work. The Roes testified that there were no objects on the stairway which would have caused a fall. The record also reflects that Hanson was not wearing shoes.

Robert J. Roberts, appellant's expert witness, testified that there is a variation in both the height of the risers and the width of the treads on the stairway and that the stairs have a slope of about forty degrees. Roberts testified that the variation in the risers and treads makes the stairs more difficult to negotiate and could create a tripping hazard. He also testified that the particular variation in the tread and riser of the first step, about one and one-half inches less in width than the other steps, makes that step easy to miss when coming out of Hanson's room on to the landing. Roberts' testimony further indicates that the treads of the stairway are worn and the edges are rounded, making the steps dangerous to negotiate if one is wearing slippery footwear.

Roberts testified that correction of the variation of the treads and risers and the slope of the stairway would require extensive remodeling of the house. However, his testimony indicates that less expensive corrective measures also could have ·reduced the alleged hazardous condition of the stairway. His recommendations include replacement of worn treads, installation of rubber mats on the treads, and installation of a handrail along the stairway.

While his testimony indicates that the stairway was in accordance with construction standards of the era in which it was built, he described the stairway as "an accident waiting to happen." There are no allegations that the stairway is in violation of local housing or safety codes. However, appellant alleges the stairway is in violation of Minn.Stat. § 504.18 (1982), which sets forth a lessor's statutory covenants.

Pursuant to a motion in limine by the Roes' counsel, the trial court ruled prior to trial that it would allow no impeachment questioning of Mrs. Roe regarding her deposition testimony about the handrail.

Appellant's counsel was also directed to modify a diagram which indicated the existence of the handrail along the stairway. He effected the modification during trial by merely having his expert witness draw a wavy line through the railing. No explanation was given for the apparent inaccuracy. Mr. Roe indicated at trial that the diagram was inaccurate but did not explicitly refer to the handrail. The record is not clear as to exactly what Mr. Roe found inaccurate

in the diagram. He merely stated, "I don't know if that drawing is quite true to fact over there." This statement is followed by discussion about the placement of a light switch in the hall.

Prior to the court's charge to the jury, appellant's counsel requested that the court include in the instructions the language of Minn.Stat. § 504.18 and language specifying that there was a common law presumption that Hanson was exercising due care immediately prior to the accident. The court denied both requests.

### ISSUES

1. Did the trial court err in not incorporating the language of Minn.Stat. § 504.18 (1982) in the charge to the jury?

2. Did the trial court err in not instructing the jury that there is a common law presumption that the decedent was exercising due care immediately prior to the accident?

3. Did the trial court err when it refused to allow appellant's counsel to question Mrs. Roe for the purposes of impeachment regarding the handrail installed after the accident?

4. Did the trial court err when it denied appellant's motion for a new trial?

5. Did the trial court err when it denied appellant's motion for judgment notwithstanding the verdict?

### ANALYSIS

1. Minn.Stat. § 504.18, subd. 1 (1982) provides in relevant part:

> In every lease or license of residential premises, whether in writing or parol, the lessor or licensor covenants:
>
> (a) That the premises and all common areas are fit for the use intended by the parties.
>
> (b) To keep the premises in reasonable repair during the term of the lease or license * * *.
>
> (c) To maintain the premises in compliance with the applicable health and safety laws of the state and of the local units of government where the premises are locat-

ed during the term of the lease or license * * *.

Appellant contends that a landlord-tenant relationship existed between Hanson and the Roes, that the evidence indicates that the stairway was in violation of section 504.18, and that this violation constitutes negligence per se. We cannot agree.

█ Even if we assume for the purposes of argument that a landlord-tenant relationship existed between Hanson and the Roes, there is no merit to appellant's argument. Negligence per se may only exist when the reasonable person standard of care is supplanted by a statutory standard of care. *See Seim v. Garavalia*, 306 N.W.2d 806, 810 (Minn.1981). The enactment of Minn.Stat. § 504.18 has not altered a landlord's tort liability. *Meyer v. Parkin*, 350 N.W.2d 435, 438 (Minn.Ct.App. 1984), *pet. for rev. denied*, (Minn. Sept. 12, 1984).

█ Furthermore, as noted by respondent, the court's instructions to the jury included an instruction in accordance with Minnesota's JIG II, 330 G–S, which encompasses the duties set out in section 504.18. *See* 4 J. Hetland & O. Adamson, Minnesota Practice, JIG II, 330 G–S (1974).

2. Appellant also asserts that the trial court erred when it refused to instruct the jury that there is a common law presumption that the decedent was exercising due care immediately prior to the accident.

Originally, the presumption of due care, like other presumptions, served as a substitute for evidence. It could be overcome as a matter of law only when "the undisputed evidence so conclusively and unmistakenly rebut[ted] the presumption that honest and fair-minded men could not reasonably draw different conclusions therefrom." In all other cases, the jury was instructed in the presumption and weighed it with the available direct and circumstantial evidence of the decedent's due care.

Case Comment, *Evidence: Statutory Presumption of a Decedent's Due Care Denies Equal Protection to Survivors Sued*

*for Wrongful Death*, 62 Minn.L.Rev. 467, 468–469 (1978) (footnotes omitted).

In *Ryan v. Metropolitan Life Insurance Co.*, 206 Minn. 562, 567–68, 289 N.W. 557, 560 (1939), our supreme court rejected the rule that presumptions should operate as substantive evidence. *Ryan* held that a presumption is merely a procedural device that allocates to a certain party the burden of going forward with evidence. *See id.* *Ryan* did indicate, however, that in a "proper case" it was within the trial court's discretion to incorporate a presumption in the charge to the jury even though the burden had been satisfied. *Id.* at 570, 289 N.W. at 561.

Subsequently, the supreme court held that it is reversible error to instruct the jury regarding the presumption of due care when the burden of proving contributory negligence rested on the party against whom the presumption operated. *TePoel v. Larson*, 236 Minn. 482, 53 N.W.2d 468 (1952). While *TePoel* did not explicitly prohibit the inclusion of the presumption in the charge to the jury in all circumstances, few if any circumstances remained where such an instruction would be proper. *See* Case Comment, *supra*, at 470–71.

In 1957, five years after *TePoel* and apparently in response to it, the Minnesota Legislature enacted Minn.Stat. § 602.04 (repealed 1978).[1] This statute revived the presumption of due care in wrongful death actions and required that the jury be instructed regarding the presumption.

In 1977, our supreme court held that Minn.Stat. § 602.04 was overbroad and an unconstitutional denial of equal protection. *Price v. Amdal*, 256 N.W.2d 461, 469

(Minn.1977). However, the supreme court in *Price* did give the common law presumption of due care what has been termed a "renewed vitality" when it stated in dictum:

> Where applicable, the common-law presumption *shall* be applied in lawsuits tried in Minnesota after the issuance date of this opinion.

*Id.* (emphasis added by appellant).

■ Appellant, citing *Price*,[2] urges that, because the Roes presented no evidence rebutting the claim of negligence, and because there was no evidence that Hanson was negligent, the trial court erred in failing to instruct the jury that there is a presumption that Hanson was exercising due care. We find no error. There is evidence that Hanson was using only a flashlight to illuminate the stairway. This evidence could support the jury's finding of negligence.

The trial court properly concluded that the jury should not be instructed on the presumption of due care.

■ 3. Appellant contends that the trial court improperly refused to permit impeachment of Mrs. Roe concerning the installation of the handrail after the accident, and that this refusal was fundamental error resulting in substantial prejudice to appellant.

Rule 407 of the Minnesota Rules of Evidence provides:

> When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not

---

**1.** Minn.Stat. § 602.04 (1976) read as follows:
In any action to recover damages for negligently causing the death of a person, it shall be presumed that any person whose death resulted from the occurrence giving rise to the action was, at the time of the commission of the alleged negligent act or acts, in the exercise of due care for his own safety. The jury shall be instructed of the existence of such presumption, and shall determine whether the presumption is rebutted by the evidence in the action.

**2.** Decisions subsequent to *Price* have not elucidated its reference to the presumption of due

care in wrongful death actions. *TePoel* has never been explicitly overruled. Rule 301 of the Minnesota Rules of Evidence provides:

> In all civil actions and proceedings not otherwise provided for by statute or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Rule 407 does not mandate that evidence of subsequent remedial measures is admissible for purposes of impeachment. The rule merely indicates that such evidence may be admissible.

> Where the case is being tried to a jury, trial courts must exercise great caution in admitting evidence of repairs made or precautions taken after an accident * *. However, the trial court is entitled to weigh the need for such evidence against the risk that the jury may improperly infer negligence therefrom. Hence, the trial court's ruling on such evidence will be upheld except upon a showing of abuse of discretion.

*Faber v. Roelofs*, 298 Minn. 16, 22, 212 N.W.2d 856, 860 (1973).

■ We conclude that the trial court did not abuse its discretion. Furthermore, viewing the evidence as a whole, it does not appear that the impeachment of Mrs. Roe would have changed the result of the trial if it had been allowed. *See Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 725 (Minn.1983) (quoting *Poppenhagen v. Sornsin Construction Co.*, 300 Minn. 73, 79–80, 220 N.W.2d 281, 286 (1974)).

Appellant's contention that Mr. Roe's challenge of the diagram resulted in substantial prejudice is not persuasive. It was not until appellant's expert was testifying that he modified the diagram. By handling the modification in this manner, appellant's counsel drew at least as much attention to the apparent inaccuracy of the diagram as did Mr. Roe.

■ 4. The test for granting a new trial is as follows:

> A new trial should not be granted unless the verdict is so contrary to the preponderance of the evidence as to imply that the jury failed to consider all the evidence or acted under some mistake or from some improper motive, bias, feeling or caprice, instead of honestly and dispassionately exercising its judgment.

*Lamb v. Jordan*, 333 N.W.2d 852, 855–856 (Minn.1983) (quoting *LaValle v. Aqualand Pool Co.*, 257 N.W.2d 324, 328 (Minn.1977)).

■ The facts of this case are considerably less certain than appellant urges. The record gives no clear guidance as to exactly why this unfortunate accident occurred. All that can be determined is that Hanson fell at some point when he was descending the stairway while using a flashlight. While installation of a handrail along the stairway and rubber mats on the treads could have been beneficial, the record does not support a conclusion that as a matter of law their absence was a causative factor of the accident.

Furthermore, the record indicates that members of the Roe family and their invitees had been using the stairway for nearly a century without a significant incident. Hanson himself had been residing in the Roe home for seven years, and had descended these stairs innumerable times without a mishap or apparent difficulty. Significantly, as was his custom, Hanson was using a flashlight while descending the stairs. We conclude that the jury's verdict absolving the Roes and finding Hanson negligent is not contrary to the preponderance of the evidence. The trial court did not err in denying appellant's motion for a new trial.

■ 5. The standard for determining the propriety of the trial court's denial of appellant's motion for judgment notwithstanding the verdict is:

> whether there is any competent evidence reasonably tending to sustain the verdict. Such a motion "admits every inference reasonably to be drawn from the evidence as well as the credibility of the testimony for the adverse party," and should not be granted unless reasonable minds can reach but one conclusion against the verdict.

*Blue Water Corporation, Inc. v. O'Toole,* 336 N.W.2d 279, 281 (Minn.1983) (citations omitted).

Having reviewed the facts of this case, we conclude that reasonable minds could have reached more than one conclusion. The trial court did not err in denying appellant's motion for judgment notwithstanding the verdict.

## DECISION

The trial court did not err in its evidentiary rulings or its jury instructions. The trial court properly denied appellant's motion for a new trial or for judgment notwithstanding the verdict.

Affirmed.